# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## W. D. COVINGTON v. COMMONWEALTH

March 15, 1923.

1. VENUE—*Criminal Law—Homicide—Conflict of Laws—Shot Fired Across County Boundary—Person Wounded Dying in Another State—Case at Bar.*—In the instant case accused was in Henry county, Va., when he fired the fatal shot across the boundary line, which struck deceased in Pittsylvania county, Va., and the deceased, after receiving the mortal wound, was removed to the State of North Carolina, where he died as a result of the wound. The accused was indicted, tried, and convicted in the circuit court of Pittsylvania county.

   *Held:* That the circuit court of Pittsylvania county had jurisdiction of the case under the provisions of section 4398 of the Code of 1919.

2. VENUE—*Criminal Law—Homicide—Conflict of Laws—Shot Fired Across County Boundary—Person Wounded Dying in Another State.*—Section 4398 of the Code of 1919 changed the rule established by *Linton's Case,* 2 Va. Cas. (4 Va.) 205, in which it was held that if one be stricken within the State, but die of the wound in another State, the offender may be indicted and tried within the State for wounding with intent to main, disable, etc., but not for murder, and constituted the act of giving a mortal wound in this State which results in death out of the State a statutory offense of murder punishable in this State. Moreover, it went further, and, by necessary implication from its terms, provided that the venue of such offense should be "in the county or corporation in which the stroke * * * was given."

3. VENUE—*Criminal Law—Homicide—Conflict of Laws—Shot Fired Across County Boundary—Person Wounded Dying in Another State.*—The effect of sections 4398 and 4770 of the Code of 1919 is merely to give the courts of the counties or corporations, in which the accused and the deceased may have been, respectively, at the time of the commission of the offense, concurrent jurisdiction, so that the offender may be prosecuted and punished in either county where the offense is not wholly committed within one county.

4. CRIMINAL LAW—*Reasonable Doubt—General Rule.*—When all of the evidence is in, then, if the evidence both for the Commonwealth and the accused leave a reasonable doubt as to the guilt of the accused, the jury must find the prisoner not guilty.

5. HOMICIDE—*Self-Defense—Burden of Proof—Instructions.*—In a prosecution for murder the court instructed the jury that before "the accused can be justified on the ground of self-defense he must prove to the satisfaction of the jury that he had reason to believe," and did believe, that he was in danger of death or serious bodily injury, and that the means resorted to by him were reasonably necessary to save himself.

*Held:* Error, as imposing upon the accused the burden of proving that he was not guilty.

6. HOMICIDE—*Self-Defense—Burden of Proof—Instructions.*—Where in a prosecution for homicide an instruction imposed upon the accused the burden of proof to establish self-defense, the error is not cured by other instructions on the subject of the burden of proof resting upon the Commonwealth at every stage of the case after all the evidence is in, as the erroneous instruction could not be harmonized with the others.

7. INSTRUCTIONS—*Burden of Proof—Shifting of Burden of Proof—Criminal Law.*—An instruction which, on its face, is confined in its application to what practically amounts to the shifting of the burden of proof, which occurs during the progress of almost every trial (although theoretically it is not strictly accurate to say that the burden of proof ever shifts from the Commonwealth to the criminal), and concerns merely the sufficiency of the evidence to establish a *prima facie* case in favor of the respective parties at the different stages of the trial referred to in the instruction, whereupon the burden or duty of bringing forward further proof to overcome the adversary's *prima facie* case shifts, now to one side and now to the other, as the trial proceeds, is not objectionable where it does not deal with the final weighing of the evidence by the jury. Between such an instruction and an instruction that the burden of proof rests upon the Commonwealth when the jury come to weigh the evidence after it is all in, there is no conflict.

8. APPEAL AND ERROR—*Criminal Law—Instructions—Conflict.*—Where in a criminal case an instruction is in direct conflict with others upon a vital issue, this constitutes reversible error.

Error to a judgment of the Circuit Court of Pittsylvania county.

*Reversed and new trial awarded.*

By the verdict and judgment under review the accused, W. D. Covington, was found guilty of murder in the second degree, and sentenced to confinement in the penitentiary for seven years.

The accused was in Henry county, Virginia, when he fired the fatal shot, which struck the deceased in Pittsylvania county, Virginia (the accused being at the time in the former county, near the line dividing it from the latter county, and the deceased being at the time near such line but in the latter county); and the deceased, after receiving the mortal wound, was removed out of the State of Virginia into the State of North Carolina, where he died, as the result of the wound.

The accused was indicted, tried and convicted in the Circuit Court of the county of Pittsylvania.

The sole defense of the accused on the merits was that he fired the fatal shot in self-defense. On this subject there was conflict in the evidence, and the court, on motion of the Commonwealth, gave the following instructions:

Instruction No. 3. "The court instructs the jury that the law of self-defense is the law of necessity; and before the accused can be justified on the ground of self-defense he must prove to the satisfaction of the jury that he had reason to believe, and in fact did believe, that he was in danger of death or serious bodily injury at the hands of the deceased; and that the means resorted to by him were reasonably necessary under the circumstances as they appeared to him, to save himself from death or serious bodily harm."

On motion of the Commonwealth the court gave, among others, the following additional instructions:

Instruction No. 10. "The court instructs the jury that one accused of the commission of a crime cannot rely upon the plea of self-defense unless he was without fault in bringing upon himself the necessity of committing the act of which he is accused; and the jury are to judge, considering all the evidence, whether or not the

accused was without fault in bringing upon himself such necessity and whether or not such necessity existed."

On motion of the accused the court, among others, also gave the following additional instructions:

Instruction No. C. "The court instructs the jury that the law presumes every person charged with crime to be innocent until his guilt is established by the Commonwealth beyond a reasonable doubt, and this presumption goes with the accused through the entire case, and applies at every stage thereof; and if, after having heard all the evidence in the case, the jury have a reasonable doubt of the guilt of the accused upon the whole case, or as to any fact essential to prove the charge made against him in the indictment, it is their duty to give the prisoner the benefit of the doubt, and find him not guilty."

Instruction No. D "The court instructs the jury that the law presumes the accused to be innocent until he is proved guilty beyond a reasonable doubt, and if there is upon the minds of the jury any reasonable doubt of the guilt of the accused, the law makes it their duty to acquit him, and that mere suspicion or probability of his guilt, however strong, is not sufficient to convict, nor is it sufficient if the greater weight or preponderance of evidence supports the charge in the indictment. But to warrant his conviction, his guilt must be proved so clearly, and the evidence thereof must be so strong, as to exclude every reasonable hypothesis of his innocence."

*Harris & Harvey*, for the plaintiff in error.

*John R. Saunders*, Attorney-General, *J. D. Hank, Jr.,* Assistant Attorney-General, and *Leon M. Bazile*, Second Assistant Attorney-General, for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The first question presented by the assignments of error for our decision is this:

[1] 1. Did the Circuit Court of Pittsylvania county have jurisdiction of the case under the provisions of section 4398 of the Code?

The question must be answered in the affirmative.

Section 4398 of the Code is as follows: "If any person be stricken or poisoned in and die by reason thereof out of the State, the offender shall be guilty, and be prosecuted and punished, as if death had occurred in the county or corporation in which the stroke or poison was given or administered."

This statute was enacted following the decision in *Linton's Case,* 2 Va. Cas. (4 Va.) 205, in which it was held that if one be stricken within the State but die of the wound in another State, the offender may be indicted and tried within the State for wounding with intent to maim, disable, disfigure or kill, but not for murder. It is ably argued for the accused that the only intention and effect of this statute was to change the rule established by *Linton's Case,* so as to constitute the statutory offense of murder in such case, punishable as such in this State; that neither the purpose nor effect of the statute was to designate the venue for the trial of such cases; and that it was not until section 4770 of the Code was enacted (Acts 1895-6, p. 605) that the venue for the trial of such cases was provided for, and that under the provisions of that statute the accused cannot be indicted elsewhere than in Henry county, nor tried elsewhere, unless upon removal of the case therefrom under the statute law applicable to the removal of criminal cases.

Section 4772 of the Code is as follows: "If a mortal wound or other violence or injury be inflicted by a person within this State upon one outside of same, or *upon one in this State who afterwards dies from the effects thereof out of the State*, the offender shall be amenable to prosecution and punishment for the offense in the courts of the county or corporation in which he was at the time of the commission thereof, as if the same had been committed in such county or corporation." (Italics supplied.)

[2] We are of opinion that section 4398 of the Code did, it is true, change the rule established as aforesaid by *Linton's Case*, and constituted the act of giving a mortal wound in this State which results in death out of the State a statutory offense of murder punishable in this State (see *State* v. *Hall*, 114 N. C. 909, 19 S. E. 602, 41 Am. St. Rep. 822, 28 L. R. A. 59, and authorities cited for discussions of the principle involved); but it went further and, by necessary implication from its terms, designated the venue for the trial of such offenses in this State, namely, it in effect provided that the venue thereof should be "in the county or corporation in which the stroke * * * was given," which in the instant case was in Pittsylvania county; for, under the general statute giving circuit courts jurisdiction of all indictments for felonies wholly committed within their territorial jurisdiction, that court had jurisdiction of the case following the going into effect of section 4398, providing, in substance, that in such a case as that in judgment the offense must be regarded as having been wholly committed (both begun and completed) in that county.

[3] The italicized portion of section 4770, as above copied, together with the concluding portion of that section, does, it is true, also confer jurisdiction of such

offenses upon the courts of the county, (or corporation) in which the offender was at the time of the commission of the offense, which in the instant case was Henry county; but the effect of the two statutes (sections 4398 and 4770) is merely to give the courts of the counties (or corporations), in which the accused and the deceased may have been, respectively, at the time of the commission of such offenses, concurrent jurisdiction; so that the offender may be prosecuted and punished in either county (or corporation). With respect to offenses which are wholly committed within one county, section 4771 confers a similar jurisdiction in both counties, where the offense is committed within one hundred yards of the line between two counties, and section 4772 confers a like jurisdiction where the mortal wound, etc., is given in one county and death ensues in another. We see nothing incongruous or objectionable in the like result being accomplished by two separate statutes, as by sections 4398 and 4770 aforesaid, which is attained in the cases of sections 4771 and 4772 by single statutes.

The next question presented for our decision is this:

[4, 5] 2. Did the court err in giving the instruction it did (instruction No. 3 above copied), on the subject of the burden of proof resting upon the accused in order to sustain his claim of self-defense?

The question must be answered in the affirmative.

This instruction is in substance the same as the instruction condemned in *Potts' Case*, 113 Va. 732, 73 S. E. 470. The same principle which is involved was enunciated in *Litton's Case*, 101 Va. 833, 849, 44 S. E. 923, 928, namely, that "when all of the evidence is in, then if the evidence, both for the Commonwealth and the accused, leave a reasonable doubt as to the guilt of the accused, the jury must find the prisoner not guilty." As in the *Potts' Case*, the instruction under

review does not contain this essential qualification, and, as said in such case: "The instruction * * * does not incorporate the qualification adverted to, and the practical effect of the omission is to impose upon the accused the burden of proving that he is not guilty."

It is true that in the *Potts' Case* there was no other instruction which could be relied on as tending to cure the error of the aforesaid instruction which was given. It is also true that in the instant case the court, among others, gave the additional instructions No. 10, on motion of the Commonwealth, and Nos. C and D, at the instance of the accused, which are set forth above; and it is ably argued for the Commonwealth that *Potts' Case* is therefore not in point, and that, as under the established rule on the subject that all instructions given in every case must be read together, the additional instructions given upon the subject of the burden of proof in the instant case cured the error in the instruction in question.

[6] We are not satisfied, however, that the additional instructions cure the error in instruction No. 3 in question. The situation is different from that presented by the giving of the familiar instruction in cases of homicide, to the effect that when the Commonwealth's evidence has established that the accused has committed a homicide, it is *prima facie* presumed to be murder in the second degree, and that the burden is upon the accused to prove that the offense is below murder in the second degree and upon the Commonwealth to elevate the offense to murder in the first degree.

[7] Such an instruction, as appears on its face, is confined in its application to what practically amounts to the shifting of the burden of proof, which occurs during the progress of almost every trial, not only in criminal but also in civil cases, (although theoretically, as we know, it is not strictly accurate to say that the burden

of proof ever shifts from the Commonwealth in criminal or from the plaintiff in civil cases), and concerns merely the sufficiency of the evidence to establish a *prima facie* case in favor of the respective parties at the different stages of the trial referred to in the instruction, whereupon the burden or duty of bringing forward further proof to overcome the adversary's *prima facie* case shifts, now to one side and now to the other as the trial proceeds. Such an instruction directs the minds of the jury to a retrospective consideration of the evidence as it stood at the different stages of its introduction during the progress of the trial—which is frequently very helpful to them in weighing the evidence—but does not deal with the final weighing of the evidence by the jury when all the evidence is in, to determine whether the Commonwealth has established its case by that degree of proof which the law requires. And this is perfectly well understood by the profession and by the juries; this character of instruction having been given, indeed, so often and for so long in this State, in homicide cases, that, as said in *Sims' Case*, 134 Va. 736, 115 S. E. 382, in the opinion by Judge Burks, it is "hoary with age." Hence, there is no conflict between such an instruction and a further proper instruction informing the jury what burden of proof rests upon the Commonwealth when they come to weigh the evidence after it is all in; and, in such case, the two instructions, when read together, are entirely harmonious and correctly guide the jury in their deliberation and decision.

[8] But instruction No. 3 under consideration cannot be thus harmonized with instructions Nos. C and D given in the instant case on the subject of the burden of proof resting upon the Commonwealth at every stage of the case and after all the evidence was in. Instruction No. 3 is not addressed to the shifting burden of

22

proof which, in the sense aforesaid, may have occurred during the trial. It says that "before the accused can be *justified* on the ground of self-defense he must prove to the satisfaction of the jury," etc. This plainly has reference to the final weighing of the evidence on this subject by the jury after it is all in, and is, in substance, a direction to the jury upon such final weighing of the evidence to find against the accused upon his claim of self-defense, unless they believed that he had sustained the burden of proof imposed upon him by the instruction. Instruction No. 3 was, therefore, in direct conflict with instructions Nos. C and D upon the vital and indeed only issue in the case.

Under the well settled rule, applicable to criminal cases in such a situation, this constituted reversible error.

It is manifest from a reading of instruction No. 10, given for the Commonwealth, that it does not remove the conflict in the instructions just mentioned, or in any way cure the error contained in instruction No. 3.

In view of the conclusion we have reached upon the question under consideration, the case must be reversed and a trial *de novo* will be granted the accused.

*Reversed and new trial awarded.*