COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued by videoconference

**PUBLISHED**

WILLIAM EZELL TAYLOR, JR.

v.       Record No. 0433-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
MARCH 28, 2023

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


William Ezell Taylor, Jr. approached Kimani Donovan in a mall food court and provoked a fight. Donovan quickly gained the upper hand. After the fight was broken up, Taylor walked to his backpack and retrieved a firearm. When Donovan restarted the fight, Taylor shot him twice. Taylor also hit his sister with a stray bullet. While Taylor's sister survived, Donovan was critically injured and ultimately died in the hospital. The jury rejected Taylor's self-defense argument, and he was convicted of many different charges. He raises nine assignments of error, including one issue of first impression: whether his three rapid-fire shots at the same person in the same instance are sufficient to sustain three counts of malicious shooting within an occupied building in violation of Code § 18.2-279. Concluding that the General Assembly intended each "discharge" of the firearm to be the relevant unit of prosecution, we affirm all three convictions and find no error in the remaining issues raised.

BACKGROUND

This tragic incident was largely captured on mall security cameras as well as bystander cell phone videos. As a result, the basic facts are not in dispute, although the parties disagree over whether what happened shows that Taylor acted in self-defense. To the extent there is any factual disagreement, we recite the record "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

Taylor went shopping at the mall with his mother, sister, and two-year-old son. Taylor brought with him a backpack he used as a diaper bag. In it was a loaded handgun, for which he did not have a concealed carry permit. After shopping, Taylor left his family members in the food court while he went to the parking lot to load packages and his son's stroller into the car. While leaving the mall, Taylor saw Donovan and two of Donovan's friends at a table in the food court. Taylor and Donovan had never met in person, but three years before this encounter Taylor confronted Donovan in a video call after discovering that Taylor's then-girlfriend had been talking to Donovan.

Taylor loaded the items into the car and returned to the mall, still carrying the backpack. He approached Donovan and mentioned the former girlfriend's name. Donovan stood and moved toward Taylor. Taylor threw the diaper bag to the floor, and then struck Donovan in the face, prompting a fistfight that Donovan had the better of until Donovan's friend separated Donovan from Taylor.

Taylor then returned to his discarded bag and retrieved his gun. He held the gun down by his side without displaying it or warning Donovan that he had a weapon. Donovan approached Taylor, and the two began fighting again. Taylor then fired his gun three times in quick succession, twice hitting Donovan in the abdomen and buttocks. One of the shots also injured

- 2 -

Taylor's sister.  Taylor and his family gathered their belongings and ran out of the mall.  Taylor ran ahead of his family, including his son, and testified that he did not know where his son was during the fight.

Donovan was transported to the hospital and went into organ failure "almost immediately."  Donovan arrived at the ER close to death and, after a procedure to stop the bleeding, he had a roughly 1% chance of survival according to his treating physicians' testimony.  Donovan underwent at least 10 operations during his 11-day stay at the hospital, during which he never regained consciousness.  Donovan ultimately was removed from life support and died.

Taylor was tried before a jury and was convicted of voluntary manslaughter (Code § 18.2-35), three counts of maliciously discharging a firearm within an occupied building (Code § 18.2-279), unlawful wounding (Code § 18.2-51), felony child neglect (Code § 18.2-371.1(B)), and carrying a concealed weapon (Code § 18.2-308(A)).  The trial court sentenced him to 35 years of imprisonment, with 16 years suspended, and 12 months in jail.

ANALYSIS

Taylor assigns nine errors to his various convictions.  We start by considering the questions of law.  Taylor contends it was error for the court to convict him of three separate counts of malicious shooting within an occupied building when each bullet was fired in the course of the same incident, and additionally that he could not be convicted of both malicious shooting within an occupied building and voluntary manslaughter for the same act of shooting.  After addressing these arguments, we take up the court's failure to give the jury Taylor's proposed supplemental instruction.  Five assignments of error question the sufficiency of the evidence; we consider those challenges as a group.[1]  Finally, we address Taylor's contention that

_____

[1] Because he contends that the evidence showed he acted in self-defense, Taylor argues the court erred in convicting him of voluntary manslaughter, unlawful wounding, and malicious

- 3 -

the trial court abused its discretion in sentencing him to the statutory maximum sentence for voluntary manslaughter.

I. The unit of prosecution for Code § 18.2-279 is each act of shooting.

Taylor was found guilty of three counts of violating Code § 18.2-279, which provides that if a person "maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons . . . the person so offending is guilty of a Class 4 felony." Taylor argues that there was "insufficient separation in [the] discharge[s] of his weapon to warrant his conviction for three separate crimes," because he fired each shot in the same location (the mall food court) at the same target (Donovan). This specific statutory interpretation question is one of first impression in Virginia, but not a difficult one, given our caselaw analyzing indistinguishable statutes.[2]

We review issues of statutory interpretation de novo. *See Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015). "[C]riminal statutes are to be strictly construed against the Commonwealth."

---

shooting within an occupied building. He also challenges whether sufficient evidence proved Donovan died of the gunshot wounds he inflicted and the presence of malice for the malicious shooting counts. Next, he argues the evidence was insufficient for the felony child neglect count because it failed to show he was the person responsible for the care of the child and that the evidence failed to show malice as to the unlawful wounding based on his errant shooting of his sister.

[2] We note that another panel of this Court, in an unpublished opinion, reached the same conclusion, affirming two counts of malicious shooting at an occupied dwelling when the defendant fired multiple bullets at two occupied motel rooms. *Tate v. Commonwealth*, No. 0549-18-1, 2019 WL 1601690 (Va. Ct. App. Apr. 16, 2019). The panel concluded that "the gravamen of the offense is the distinct act of shooting at an occupied building in a manner that may put the occupant or occupants in peril" and so "each act of shooting is the unit of prosecution" for Code § 18.2-279. *Id.*, slip op. at 4-5, 2019 WL 1601690, at *2-3. As an unpublished case, we cite *Tate* as informative and persuasive, but not as a binding precedent. *Baker v. Commonwealth*, 59 Va. App. 146, 152 n.3 (2011).

- 4 -

*Brewer v. Commonwealth*, 71 Va. App. 585, 592 (2020). But the appellate court "must also 'give reasonable effect to the words used' in a statute." *Id.* (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)). To the extent there is ambiguity, such "ambiguity should be resolved in favor of lenity," because if the legislature "does not fix the punishment for a[n] . . . offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Bell v. United States*, 349 U.S. 81, 83-84 (1955).

At core, Taylor's argument is that when Code § 18.2-279 says "maliciously discharges a firearm," the offense is incident-specific, not projectile-specific.[3] Taylor has not argued that multiple prosecutions for the same incident of shooting violate the Double Jeopardy Clause of the Fifth Amendment. Because many of our prior cases analyzing the "unit of prosecution" set out in a statute do so against the backdrop of a double jeopardy challenge, we briefly acknowledge that both the United States and Virginia constitutions protect a defendant from being "put twice in jeopardy for the same offense." Va. Const. art. I, § 8; *see also* U.S. Const. amend. V. As we have repeatedly held that this protection is "limited to assuring that the court does not exceed its *legislative* authorization," *Stephens v. Commonwealth*, 263 Va. 58, 62 (2002) (emphasis added) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)), any double jeopardy challenge necessarily folds back into interpreting the legislature's intent in enacting a criminal offense—the same inquiry we take up here.

In concluding that the legislature intended Code § 18.2-279 to be bullet-specific, we are persuaded by three things: our Supreme Court's analysis of the similar malicious shooting at an

---

[3] Taylor has not argued that he used an automatic firearm which "fires repeatedly with a single pull of the trigger" and will "continue to fire until its trigger is released or the ammunition is exhausted." *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994). Thus we need not consider here how the statute may apply to multiple shots fired simultaneously, or continuously, with a single pull of the trigger.

occupied vehicle statute, the independent risk carried by each bullet, and the statute's unambiguous use of the word "discharge."

First, Code § 18.2-154 makes it a crime to "maliciously shoot[] at, or maliciously throw[] any missile" at a vehicle or other specified type of transportation. In *Stephens*, the defendant shot at another car at least twice, hitting the driver twice. 263 Va. at 60. Our Supreme Court rejected the argument that "'in the absence of a showing that the shots constituted separate and distinct acts performed at separate times,' [the defendant] cannot be convicted of two counts of violating Code § 18.2-154," instead concluding that each shot the defendant fired was a "separate, identifiable act." *Id.* at 61-62, 63.

Applying these principles here, we see no meaningful distinction between someone who "maliciously shoots" and someone who "maliciously discharges a firearm" where the facts show, as they do here, that the trigger of the firearm was pulled multiple times. *See Branch v. Commonwealth*, 14 Va. App. 836, 839 (1992) ("Where possible, a statute should be construed with a view toward harmonizing it with other statutes. Because the Code of Virginia is one body of law, other Code sections using the same phraseology may be consulted in determining the meaning of a statute." (citation omitted)).

Second, the essence, or gravamen, of an offense under Code § 18.2-279 is the risk of endangerment or death to another as a result of discharging a firearm. *See Baker v. Commonwealth*, 284 Va. 572, 576 (2012) (looking to "gravamen of the offense to determine the legislature's intent"). The life of another is endangered with the discharge of each shot, even if multiple shots are discharged in rapid succession. *Id.* at 578 (each incident of a felon in possession of a firearm over a couple of weeks was "sufficient to create a new danger to members of the community exposed to the armed felon"). The facts here bear this out—Taylor accidentally shot his own sister with one of the three rounds fired. The statute's focus on

- 6 -

shooting within an *occupied* building further underscores the point. Given the unique harm a firearm may pose, it is logical that the legislature would intend to more severely punish a person firing multiple shots in the same occupied location in quick succession than someone who fires a single shot. A contrary ruling could mean "an individual shooting once would have no punitive deterrent from continuing to shoot as many times as possible—essentially a buy one, harm as much as you like discount." *State v. Rasabout*, 356 P.3d 1258, 1264 (Utah 2015).

Finally, we observe that the statute criminalizes the "discharge" of a firearm. *Black's Law Dictionary* defines "discharge" as "[t]he expulsion of *a bullet* from a firearm; esp. the shooting of a gun." *Discharge*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). This "bullet-specific" definition reinforces our conclusion, and has persuaded other jurisdictions interpreting similar statutes. *See, e.g.*, *Rasabout*, 356 P.3d at 1263-64 (affirming 12 counts of conviction for unlawful discharge of a firearm for shooting 12 times into a house based on analysis of the word "discharge"); *Washington v. State*, 376 P.3d 802, 807 (Nev. 2016) ("the commonly understood meaning [of 'discharge'], in the context of a firearm, is the act of the bullet leaving the weapon" (citing *Discharge*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2011) (defining "discharge" as "go off, fire"))).

For these reasons, the trial court did not err in sustaining all three counts under Code § 18.2-279.

II. Our precedent forecloses Taylor's argument that his malicious shooting offense is subsumed by the greater-included homicide offenses listed in the same statute.

Taylor argues that his convictions for malicious shooting in an occupied building are subsumed by his conviction for voluntary manslaughter. He relies on the text of Code § 18.2-279, which makes the basic offense of malicious shooting within an occupied building a Class 4 felony, but then states that "[i]n the event of the death of any person, resulting from such

- 7 -

malicious shooting . . . the person so offending is guilty of murder in the second degree."[4] Because two of the three shots Taylor fired hit and killed Donovan, he contends two of his malicious shooting convictions are lesser-included offenses to his voluntary manslaughter conviction.

While Taylor's argument finds some support in the text of the statute, we are bound to reject it by our decision in *Proctor v. Commonwealth*, 40 Va. App. 233 (2003). There, as here, the defendant argued that his murder conviction subsumed his Code § 18.2-279 conviction where he shot his wife in the living room of a house while another bystander was present in the room. *Id.* at 238-39, 246. He contended that the legislature's choice to use "shall be guilty of murder" rather than "shall *also* be guilty of murder" showed legislative intent to not punish both murder and malicious shooting.[5] *Id.* at 246. This Court disagreed. We found that the elements of the two offenses differed—that "contemporaneous physical occupation of the building is an essential element" of Code § 18.2-279 but not one required for murder. *Id.* at 247. Thus, malicious shooting within a building was not a lesser-included offense. The facts here are indistinguishable. And we agree with *Proctor*'s observation that any contrary interpretation "would allow [Taylor] to evade . . . punitive consequences for endangering the other occupants of the [mall] by the contemporaneous murder of one of them." *Id.* at 247-48.

III. The court did not err by refusing to give the proffered supplemental jury instruction.

Our "sole responsibility" in reviewing a challenge to jury instructions "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly

---

[4] We discuss the fact that Taylor was convicted of voluntary manslaughter, not second-degree murder, in Part IV.C *infra*.

[5] At the time of Proctor's conviction, the statute left the degree of murder up to the jury. Code § 18.2-279 was since amended to replace "shall be guilty of murder" with "is guilty of murder in the second degree."

raises." *Molina v. Commonwealth*, 272 Va. 666, 671 (2006) (quoting *Swisher v. Swisher*, 223 Va. 499, 503 (1982)). "A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014) (quoting *Chapman v. Commonwealth*, 56 Va. App. 725, 736 (2010)). When an offered instruction is "a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it." *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (quoting *Lincoln v. Commonwealth*, 217 Va. 370, 375 (1976)).

At trial, Taylor argued that he shot Donovan in self-defense. To that end, the trial court gave Instruction 18, virtually identical to Virginia Model Jury Instruction-Criminal Model Instruction No. 33.810 for self-defense "with fault":

> If you believe that the defendant was to some degree at fault in provoking or bringing on the fight, but you believe that:
>
> (1) he retreated as far as he could under the circumstances in a good faith attempt to abandon the fight; and
> (2) he made known his desire for peace by word or act; and
> (3) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and
> (4) he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,
>
> then he acted in self-defense, and you shall find the defendant not guilty.

Taylor argues that, left on its own, Instruction 18 placed an undefined burden of proof on Taylor, when instead the Commonwealth bore the burden of proof. Thus, he contends the court erred by rejecting his proffered supplemental instruction:

> If you find from a consideration of all of the evidence in the case that the defendant's claim of self-defense creates a reasonable doubt that he committed the offense, then you shall find him not guilty.

The Commonwealth counters that Instruction 18, despite omitting discussion of the burden of proof, does not impermissibly shift that burden. And the Commonwealth argues that any ambiguity is resolved by pairing Instruction 18 with Instruction 13, which adequately stated the law and burden of proof. Instruction 13 read:

> You have been instructed on more than one grade of homicide. If you have a reasonable doubt as to the grade of the offense, then you must resolve that doubt in favor of the defendant and find him guilty of the lesser offense.
>
> For example, if you have a reasonable doubt as to whether he is guilty of second degree murder or voluntary manslaughter, you shall find him guilty of voluntary manslaughter. *If you have a reasonable doubt as to whether he is guilty at all, you shall find him not guilty.*

(Emphasis added). We also observe that these instructions followed Instruction 2, which stated that the "presumption of innocence remains with the defendant throughout the trial, and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves each and every element of the crime beyond a reasonable doubt" and that "[t]here is no burden on the defendant to produce any evidence."

Self-defense "in Virginia is an affirmative defense." *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978). Because the absence of self-defense is "not an element of murder," and in pleading self-defense "a defendant implicitly admits the killing was intentional," a defendant bears a burden, in practice, to produce some evidence to support a claim of self-defense. *Id.* However this burden of production must be distinguished, as always, from the ultimate burden of persuasion borne exclusively by the Commonwealth. "If the defendant presents . . . evidence [of self-defense], the Commonwealth must then shoulder its burden of persuasion—requiring proof sufficient under the reasonable-doubt standard to permit a rational factfinder to reject the defense and to find the defendant guilty." *Myers v. Commonwealth*, 299 Va. 671, 679 (2021).

- 10 -

This distinction has been teased out in numerous opinions on whether jury instructions have correctly conveyed the respective burdens. Today we break no new ground in applying this well-established caselaw. It is error for a self-defense instruction to affirmatively require the accused to carry the burden of proof. *Covington v. Commonwealth*, 136 Va. 665, 674 (1923) (reversing where the self-defense instruction included the requirement that the accused "must prove to the satisfaction of the jury" the elements of self-defense); *Jones v. Commonwealth*, 187 Va. 133, 142 (1948) (reversing where the self-defense instruction required the accused to "show to the jury" that he acted in self-defense). On the other hand, it is not necessary to instruct the jury that the Commonwealth "must disprove beyond a reasonable doubt every fact constituting" a claim of self-defense. *McGhee*, 219 Va. at 563 (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). If a court properly instructs the jury that "[t]here is no burden on the defendant to produce any evidence," it is not error to refuse an "additional instruction on the burden of proving affirmative defenses." *Graham v. Commonwealth*, 31 Va. App. 662, 673-74 (2000) (affirming refusal to give additional instruction on burden of proof for self-defense because jury was generally instructed on burden of proof). And, as always, where granted instructions "fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Huguely*, 63 Va. App. at 129 (quoting *Stockton v. Commonwealth*, 227 Va. 124, 145 (1984)).

Taylor suggests the model instruction on self-defense was like that in *Jones*, which "took from the accused his right to acquittal if the jury, after considering all the evidence, entertained a reasonable doubt whether he acted in self-defense or not." 187 Va. at 143. But Taylor has not identified any misleading aspect of the instruction given here. That this instruction does not discuss burden at all does not change the analysis because Instruction 2 informed the jury that "[t]here is no burden on the defendant to produce any evidence" and that the presumption of

innocence required the jury to find the "defendant not guilty unless the Commonwealth proves each and every element of the crime beyond a reasonable doubt." Instruction 13 also squarely, and correctly, placed the burden to prove any degree of murder solely at the feet of the Commonwealth: "If you have a reasonable doubt as to whether he is guilty at all, you shall find him not guilty." Together, the instructions fully and fairly covered the relevant principles of law.[6] And with the relevant law already accurately stated, the trial court was within its discretion to find that Taylor's proposed supplemental instruction was unnecessary.[7] *See Graham*, 31 Va. App. at 674 (where "instructions given defined the elements of proof and the burden of proof" there was no error in refusal "to give the additional instruction on the burden of proving affirmative defenses").[8]

IV. The evidence was sufficient to sustain each of Taylor's convictions.

When reviewing the sufficiency of the evidence, we presume the judgment of the trial court is correct and we will not disturb it unless it is plainly wrong or without evidence to

---

[6] In a separate line of cases examining the distinction between jury instructions that include permissible inferences, contrasted with those creating mandatory presumptions that may violate the Due Process Clause, our Supreme Court likewise considered two instructions in tandem and found no error where one did not require the jury to draw any conclusion, and the other "instructed the jury that the Commonwealth had the burden of proving each element of the offense beyond a reasonable doubt." *Dobson v. Commonwealth*, 260 Va. 71, 76 (2000). Nothing in our consideration of two instructions together should be taken to suggest a constitutional error in one instruction could be cured by another instruction.

[7] That the proposed supplemental instruction was derived in part from *McGhee* does not alter our analysis. The trial court correctly noted that our caselaw discourages pulling jury instruction language from appellate opinions because "[a]ppellate language used to explain a ruling or illustrate a point must necessarily be tailored to the facts and circumstances of the case then before the court on appeal." *Shaikh v. Johnson*, 276 Va. 537, 546 (2008). "Unless clearly intended for use as a jury instruction, such language is inappropriate for that purpose." *Id.*

[8] The dissent contends that the prosecution used the language of the model jury instruction in a misleading way during closing argument. Taylor did not object to the Commonwealth's characterization of the jury instructions in closing argument; nor did Taylor suggest there was any error in the Commonwealth's argument in this appeal. Thus, we do not consider it.

support it. *Smith v. Commonwealth*, 296 Va. 450, 460 (2018). The only question is whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016). To the extent we must interpret a statute, we do so de novo. *Lopez*, 73 Va. App. at 77.

A.

Taylor argues the evidence showed he shot Donovan in self-defense and was therefore insufficient to convict him for manslaughter, unlawful wounding, or malicious shooting within an occupied building. "Self-defense is an affirmative defense . . . and in making such a plea, a 'defendant . . . assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the mind[] of the [finder of fact].'" *Commonwealth v. Sands*, 262 Va. 724, 729 (2001) (quoting *McGhee*, 219 Va. at 562). "Whether an accused [defendant] proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993). But "undisputed facts may establish self-defense as a matter of law," in which case the trial court should strike the Commonwealth's evidence. *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998), *aff'd*, 257 Va. 239 (1999).

When acting in self-defense, "the force employed must be proportional to the threat posed." *Peeples v. Commonwealth*, 30 Va. App. 626, 635 (1999) (en banc). "To justify the use of deadly force, the defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat." *Id.* at 634. When the defendant has "some fault in the first instance in provoking or bringing on the difficulty," homicide in self-defense is excusable only if the defendant "when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977) (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)).

- 13 -

We concluded that the evidence was insufficient to establish self-defense in *Lynn*, 27

Va. App. at 354-55, where the defendant shot and killed the victim after a fight in which the

defendant alleged that the victim had threatened him and his wife with a gun. Because the

defendant had provoked the fight and never retreated, even assuming the jury believed the victim

had a gun, "it could have reasonably concluded that [the defendant] had quelled any danger to

him or his wife once he had disarmed [the victim]." *Id.* at 355. Thus, we affirmed the trial court.

*Id.*

This case is similar. Here, each component of excusable homicide in self-defense—

whether Taylor retreated, whether he announced a desire of peace, and whether he faced great

bodily harm—is in factual dispute and thus was appropriate for the jury to resolve. The

Commonwealth presented evidence that Taylor did not retreat or show any intent to abandon the

fight and that he instead walked to the backpack to pull out his gun. Taylor did not attempt to

flee. He hid his gun out of sight. He never announced a desire for peace orally or through

gestures. Finally, while Taylor testified that he was afraid Donovan—who was unarmed—would

knock him unconscious and kill him, the jury was "entitled to disbelieve the self-serving

testimony of the accused." *Marable v. Commonwealth*, 27 Va. App. 505, 509 (1998).

B.

As to whether the evidence was sufficient to show that Donovan died from the gunshot

wounds, it was the Commonwealth's burden to prove that Taylor's actions proximately caused

Donovan's death. *Brown v. Commonwealth*, 278 Va. 523, 529 (2009). "Established principles

of proximate causation are applicable in both civil and criminal cases." *Id.* "A proximate cause

is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause,

produces a particular event and without which that event would not have occurred.'" *Id.*

(quoting *Williams v. Joynes*, 278 Va. 57, 62 (2009)). "When a defendant's . . . conduct 'put[s]

- 14 -

into operation' an intervening cause of a death, the defendant remains criminally responsible for that death." *Id.* (second alteration in original) (quoting *Commonwealth v. Jenkins*, 255 Va. 516, 521 (1998)). "Thus, an intervening cause of such death that is a probable consequence of the defendant's own conduct will not constitute a superseding cause breaking the chain of proximate causation." *Id.*

Virginia courts have consistently held that "medical treatment received by a victim is part of the causal chain put into operation by the defendant's wrongful act." *Levenson v. Commonwealth*, 68 Va. App. 255, 260 (2017). "When a defendant has inflicted wounds upon a victim that result in an affliction or disease, the defendant is criminally responsible for the victim's death . . . if the wounds caused the death indirectly through a chain of natural effects and causes." *Jenkins*, 255 Va. at 521. In *Jenkins*, our Supreme Court affirmed a murder conviction where a victim of three gunshot wounds, who had previously been in stable condition, died from aspiration of his vomit after four days in the hospital. *Id.* at 518, 521.

There was sufficient evidence here to prove—beyond a reasonable doubt—Taylor was the proximate cause of Donovan's death. The Commonwealth presented testimony that Donovan was previously healthy, arrived at the hospital from the shooting with a 1% chance of survival, and never regained consciousness in 11 days at the hospital, after many surgeries. Taylor did not rebut this testimony with *any* evidence of an intervening cause, let alone an intervening cause that would fall outside the "probable consequence of [his] own conduct." *Brown*, 278 Va. at 529.

## C.

Next, we consider whether there was sufficient evidence of malice to sustain Taylor's convictions for malicious shooting within an occupied building under Code § 18.2-279. Taylor argues that he acted "under the heat of passion, upon provocation, if not[] the reasonable fear of

- 15 -

great bodily injury, all of which excludes the existence of malice." For support, he points to the fact that the jury found him not guilty of second-degree murder but guilty of voluntary manslaughter—intentional killing without malice—and unlawful wounding (instead of malicious wounding) of his sister.

Code § 18.2-279 provides:

> [I]f any person maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons . . . the person so offending is guilty of a Class 4 felony. In the event of the death of any person, resulting from such malicious shooting . . . the person so offending is guilty of murder in the second degree.

The statute goes on to define a lesser offense: "If any such act be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony; and, in the event of the death of any person resulting from such unlawful shooting . . . the person so offending is guilty of involuntary manslaughter." *Id.*

Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019)). Taylor is correct to point out that malice and heat of passion or provocation are mutually exclusive. *See, e.g.*, *id.* at 814 ("[M]alice excludes passion, and passion presupposes the absence of malice." (quoting *Lynn*, 27 Va. App. at 355)). But his argument relies on the assumption that the jury's decision not to find malice for the homicide and wounding charges required it not to find malice on the shooting in an occupied building charge.

That assumption is wrong. "The fact that verdicts may, on their face, arguably appear inconsistent does not provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support each verdict." *Pugliese v. Commonwealth*, 16 Va. App. 82, 96 (1993). "Jury verdicts may appear inconsistent because the jury has elected through mistake,

- 16 -

compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense." *Id.*

Taylor intentionally fired his weapon in an occupied mall food court. Setting aside the other convictions and looking at this charge alone, the conviction is based on sufficient evidence that Taylor maliciously shot within an occupied building. Whatever reason the jury may have had for convicting for the lesser-included homicide and wounding offenses does not impact the validity of its verdict on the malicious shooting in an occupied building offense.

D.

Challenging his conviction for felony child neglect under Code § 18.2-371.1(B),[9] Taylor argues the evidence failed to prove that he was "responsible for the care" of his son. We disagree.

While Taylor admits that his son was with him at the mall, he claims that he turned over care of his son to the child's grandmother starting when he left the mall to drop shopping bags off at the car and up through the time of the shooting. The Commonwealth presented evidence that Taylor shot a gun three times with his son nearby and then ran out of the mall seemingly without regard for his son's whereabouts. Determining whether Taylor was "responsible for the care of a child" is a matter of fact to be decided by the factfinder. The statute "'requires proof only that a person is "responsible for the care of a child"'"—"[n]othing in this language conveys that an individual cannot have joint responsibility with another individual for the child." *Carrington v. Commonwealth*, 59 Va. App. 614, 621 (2012) (quoting *Snow v. Commonwealth*,

---

[9] Code § 18.2-371.1(B)(1) states:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

33 Va. App. 766, 773 (2000)). A reasonable factfinder could conclude that Taylor was responsible for the care of his nearby son and that his acts and omissions showed a reckless disregard for that child's life with a substantial risk of harm. *See Jones v. Commonwealth*, 272 Va. 692, 698 (2006) (Code § 18.2-371.1(B) requires a substantial risk of serious injury to the child, not actual injury).

E.

Finally, Taylor challenges the sufficiency of the evidence for his unlawful wounding conviction under Code § 18.2-51,[10] arguing that he did not intend to shoot his sister. At trial, the Commonwealth relied on the doctrine of transferred intent—that Taylor's intent to harm Donovan could be transposed to his accidental shooting of his sister. *See Blow v. Commonwealth*, 52 Va. App. 533, 541 (2008) ("The doctrine of transferred intent permits a fact finder to transpose a defendant's criminal intent to harm an intended victim to another unintended, but harmed, victim."). Contending that his sister was hit by a bullet accidentally fired when he stood up after shooting Donovan, Taylor argues there was no intent to transfer because this particular bullet was not intended for anyone.

The entire shooting was captured on video and presented to the jury. We cannot say it was plain error for a reasonable trier of fact to conclude Taylor fired three shots at Donovan, in rapid succession, with the "intent to maim, disfigure, disable, or kill" and that this intent could transfer to the harm Taylor's sister suffered and thus support an unlawful wounding conviction.

---

[10] Code § 18.2-51 states:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

V. The trial court did not abuse its discretion in sentencing Taylor to the statutory maximum.

Finally, Taylor argues the trial court abused its discretion in sentencing him to the maximum sentence permitted by statute for his voluntary manslaughter conviction. It is well-established that "[i]f a sentence imposed is within the statutory limits fixed by the legislature, the assumption is that the sentence will not be disturbed on appeal." *Bassett v. Commonwealth*, 13 Va. App. 580, 582 (1992). Here, the parties agree that the sentence imposed was within the range set by the legislature. *See* Code §§ 18.2-10(e), 18.2-35. This is the extent of our substantive sentencing review "[a]bsent an alleged statutory or constitutional violation." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). Taylor does not argue that the sentence was procedurally unreasonable, so our review is complete.

## CONCLUSION

For all these reasons, we affirm the trial court's judgment.

*Affirmed*.

Chaney, J., concurring in part, and dissenting in part.

The jury rejected William Taylor's claim of self-defense after the trial court gave the jurors inadequate instructions on the law of excusable self-defense. The trial court erred in refusing Mr. Taylor's proposed supplemental jury instruction which was necessary to inform the jurors about the limited nature of Mr. Taylor's burden of persuasion with respect to his self-defense claim. Therefore, I respectfully dissent from the majority's opinion affirming Mr. Taylor's convictions for voluntary manslaughter, unlawful wounding, and maliciously discharging a firearm within an occupied building. Because Mr. Taylor did not argue for reversal of the child neglect conviction based on the trial court's error in refusing his proposed supplemental jury instruction regarding self-defense, I concur with the majority's opinion affirming the conviction for child neglect.

Mr. Taylor's self-defense claim is a claim of *excusable* self-defense rather than *justifiable* self-defense because Mr. Taylor admits that he threw the first punch, hitting Mr. Donovan in the face. "Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." *Gilbert v. Commonwealth*, 28 Va. App. 466, 472 (1998) (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). "When the accused is free from fault in bringing on the fray, the accused 'need not retreat, but is permitted to stand his [or her] ground and repel the attack by force, including deadly force, if it is necessary.'" *Id.* (alteration in original) (quoting *Foote v. Commonwealth*, 11 Va. App. 61, 67 (1990)).

> Excusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

*Id.* at 473 (quoting *Bailey*, 200 Va. at 96). If a homicide is either justifiable or excusable, the accused "is deemed to be innocent and guiltless of any crime." *Bailey*, 200 Va. at 96 (citations omitted).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993) (citing *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Id.* (citing *Yarborough v. Commonwealth*, 217 Va. 971, 979 (1977)).

A defendant who asserts a claim of self-defense does *not* have the burden to persuade the jurors that he acted in self-defense. "[A] defendant need only sustain a plea of self-defense to the point where the evidence in support thereof, when considered along with all other evidence produced in the case, raises a reasonable doubt in the minds of the jurors regarding the guilt of the accused." *McGhee*, 219 Va. at 561 (citations omitted). Thus, the defendant claiming self-defense has the burden to produce evidence "sufficient to create a reasonable doubt that he acted in self-defense." *Smith*, 17 Va. App. at 71. If the defendant meets *this burden*, he "is deemed to be innocent and guiltless of any crime" and the jurors must acquit him. *Bailey*, 200 Va. at 96.

The trial court gave the jury the following instruction, which both parties offered as a model jury instruction for excusable self-defense:

> If you believe that the defendant was to some degree at fault in provoking or bringing on the fight, *but you believe that*:
>
> (1) he retreated as far as he could under the circumstances in a good faith attempt to abandon the fight; and
> (2) he made known his desire for peace by word or act; and

(3) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and

(4) he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,

*then he acted in self-defense, and you shall find the defendant not guilty*.

(Emphases added). This instruction accurately states that a juror must find the defendant not guilty *if the juror is persuaded to believe* that the four listed elements of excusable self-defense are true and that the defendant acted in self-defense. But the instruction is inadequate because it fails to instruct jurors that they must also acquit the defendant if they have a reasonable doubt about whether the four listed elements of excusable self-defense are true. An additional instruction was, therefore, necessary to clearly inform the jury that they were required to acquit Mr. Taylor if the evidence raised a reasonable doubt about whether he acted in self-defense.

Mr. Taylor proposed the following supplemental instruction to clarify the misleading "model instruction" on excusable self-defense:

If you find from a consideration of all of the evidence in the case that the defendant's claim of self-defense creates a reasonable doubt that he committed the offense, then you shall find him not guilty.

Mr. Taylor's proposed supplemental self-defense instruction was offered to clarify that he was entitled to acquittal if the evidence raised a reasonable doubt that he acted in self-defense even if the jurors were not persuaded *to believe* the four elements of excusable self-defense. Such a supplemental instruction was necessary to properly inform the jury about the limited nature of Mr. Taylor's burden of persuasion with respect to his self-defense claim. Mr. Taylor was entitled to have this necessary supplemental instruction provided to the jury notwithstanding the fact that it is not included in the "model" self-defense instruction. *See* Code § 19.2-263.2 ("A

- 22 -

proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions.").

The incompleteness of the "model" self-defense instruction appears to have even misled the Commonwealth's attorney to argue to the jury:

> [T]he *person who starts the fight*, if they have any responsibility that says to some degree at fault [] in provoking the fight *has to prove all four of the things listed here* - not one, not two, all of them, *has to prove them all to you before he can claim that he was not guilty by self-defense*.

(Emphases added).

> Not only does the defendant *fail in proving all of the things as he is required to do under the law, all those four elements*, he can't prove any of them.

(Emphasis added). Thus, the Commonwealth appears to have relied on the misleading "model" jury instruction to argue to jurors that Mr. Taylor was required to prove the four elements of excusable self-defense when he was only required to raise a reasonable doubt about whether he acted in self-defense. *See Smith*, 17 Va. App. at 71. The fact that even the Commonwealth's attorney was misled to erroneously shift the burden of persuasion to Mr. Taylor demonstrates that the "model" self-defense instruction is misleading.

Moreover, considering all the jury instructions together, the combined instructions fail to remedy the misleading nature of the model instruction on excusable self-defense. The model self-defense instruction creates the misimpression that jurors must affirmatively believe that Mr. Taylor acted in self-defense before he is entitled to an acquittal based on self-defense. The model self-defense instruction thereby placed a burden on Mr. Taylor to *persuade* jurors that he acted in self-defense, although the law requires only the *creation of a reasonable doubt* that he acted in self-defense. *See id.* Contrary to the majority's contention, the misimpression created

by the model self-defense instruction is not cured by the general instructions that (i) reasonable doubt about the defendant's guilt requires a verdict of not guilty, (ii) the defendant is presumed innocent, and the Commonwealth has the burden to prove each and every element of the crime beyond a reasonable doubt, and (iii) the defendant has no burden to put on evidence. The combined jury instructions fail to clearly state that a juror's belief that the four elements of excusable self-defense are true is sufficient—but not necessary—to require Mr. Taylor's acquittal. The combined jury instructions were inadequate because they failed to clearly inform the jurors that they were required to find Mr. Taylor not guilty if the evidence raised a reasonable doubt that he acted in self-defense.

The trial court erred in failing to give the jury Mr. Taylor's proposed supplemental self-defense instruction to provide necessary clarification of the "model" instruction on excusable self-defense. The trial court abused its discretion in refusing Mr. Taylor's proffered supplemental self-defense instruction because the court thereby failed in its responsibility to ensure that the law has been clearly stated. *See Huguely v. Commonwealth*, 63 Va. App. 92, 129-30 (2014). The trial court's refusal to supplement the model self-defense instruction "took from the accused his right to acquittal if the jury, after considering all the evidence, entertained a reasonable doubt whether he acted in self-defense or not." *Jones v. Commonwealth*, 187 Va. 133, 143 (1948). Thus, there can be no reasonable assurance that the jury would have returned the same verdicts absent the trial court's error in instructing the jurors on the law.[11] *See Commonwealth v. White*, 293 Va. 411, 421-22 (2017) (recognizing that the ultimate question in constitutional harmless error analysis is "whether the [factfinder] *would have* returned the same verdict absent the error" (alteration in original) (quoting *Washington v. Recuenco*, 548 U.S. 212,

---

[11] As the Commonwealth acknowledged during oral argument, if the trial court erred in failing to provide Mr. Taylor's supplemental self-defense instruction to the jury, such error is not harmless error.

221 (2006))). Therefore, I would vacate the convictions for voluntary manslaughter, unlawful wounding, and maliciously discharging a firearm within an occupied building, and remand for retrial with proper jury instructions.