# Richmond

## EARL M. BAILEY V. COMMONWEALTH OF VIRGINIA.

June 16, 1958.

Record No. 4795.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*A: Jeffery Bivins (Bivins, Jacobs & Bivins,* on brief), for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

Earl M. Bailey, sometimes hereinafter called the defendant, was indicted for the murder of Charles Jackson Pittman. He pleaded not guilty, and a jury having been waived in the manner prescribed by Code, § 19-166, as amended by Acts 1952, ch. 349, p. 649, he was tried by the lower court which found him guilty of voluntary manslaughter and fixed his punishment at confinement in the penitentiary for four years. Imposition of the sentence was suspended upon good behavior after service of ninety days in jail. The defendant appeals claiming that the judgment is contrary to the law and evidence.

The essential facts are not in dispute. Charles Jackson Pittman and Alice Rue were married on February 5, 1942. They had a son and daughter. Marital difficulties over a period of several years culminated in their separation on January 13, 1956, and in the following May the wife secured a decree of divorce *a mensa* on the ground of constructive desertion and cruelty. On January 7, 1957, with some misgivings on the wife's part, they resumed marital relations at their former residence in Hampton.

Earl M. Bailey, the defendant, had been a friend of the Pittmans before their marital difficulties arose. After the couple had separated, and even before, Mrs. Pittman and Bailey had been keeping company. She testified that they had planned to marry after her divorce had become final. This situation provoked the jealousy of Pittman who on a number of occasions before the homicide had voiced threats to kill Bailey.

On January 24, 1957, about noon, Mrs. Pittman telephoned Bailey requesting that he meet her at 2:00 p. m. on that day at her mother's apartment in the city of Warwick, stating that she desired that he bring her some pictures which her son wanted for his scrapbook. Bailey demurred, reminding Mrs. Pittman of the recent threats which her husband had made against him. Mrs. Pittman replied that her difficulties with her husband had increased and that, in fact, just two days before he had shot at her and she desired to discuss the matter with him, Bailey. She suggested that she would let him into her mother's apartment through the rear door. Bailey agreed to the meeting. Be-

fore leaving home he put in the pocket of his topcoat a pistol which, he said, he had recently been carrying because of Pittman's threats against him. Bailey went to the apartment at the agreed time and was admitted by Mrs. Pittman through the rear door leading into the kitchen. Mrs. Pittman locked the rear door and bolted and put the safety chain on the front door. She and Bailey were then the only occupants of the apartment.

The apartment, which is on a second floor, consists of a combination living and bedroom, a kitchen, a bathroom, and front hall, the latter leading from the bedroom to the bathroom.

The couple went into the bedroom and while they were standing there Bailey produced the desired pictures. He removed his topcoat and placed it on the bed and they sat together on the foot of the bed. After they had been together a few minutes, and while they were examining and discussing the pictures, they heard what Mrs. Pittman described as a "soft knock" at the front door. This was immediately followed by a "loud knock and the crashing of wood." Mrs. Pittman ran to the front door and tried to hold it. She was unsuccessful in this and her husband crashed through the door and came into the hall. He rushed into the bedroom where Bailey was standing. Pittman was carrying under his leather jacket some object which both Bailey and Mrs. Pittman said they thought was a gun. According to Bailey's testimony, he grabbed his topcoat and took the pistol from the right-hand pocket. He said to the advancing Pittman, "Jack, I have a gun too." He fired at or toward Pittman but the bullet went astray and struck the television set which was just to Pittman's right. Pittman continued to advance and as he neared Bailey raised over his head the implement which he was carrying, indicating the purpose of striking Bailey with it. Bailey then saw that the implement was not a gun, as he had first thought, but was a lug wrench. Thinking that Pittman was about to strike him with it, he (Bailey) fired the second and fatal shot. When the police arrived shortly after the shooting the heavy lug wrench was found on the floor near Pittman's body.

Bailey testified that as Pittman advanced upon him from the front door and along the hall into the bedroom, he (Bailey) had no way of escape to either the front or rear door, except by going past his assailant. In this he was corroborated by the sketch of the apartment prepared by a police officer. This shows that the only doorway

from the bedroom led into the hall, and that the only door from the hall into the kitchen was opposite the front door.

The case was defended in the court below on the ground that the killing was in justifiable or excusable self-defense. It is true, as the Commonwealth argues, that the homicide was presumed to be murder in the second degree and the burden was on the defendant to show that it was a case of justifiable or excusable homicide. *Smith* v. *Commonwealth*, 192 Va. 186, 189, 64 S. E. 2d 761, 762, 763. The defendant insists that he has borne this burden and that despite the finding of the lower court that the killing was in self-defense, it erroneously convicted him.

As we interpret the finding of the lower court, it held that while the killing was shown to have been in self-defense, the defendant was deprived of the right to assert that defense because, it said, he was partly at fault in bringing about the difficulty which necessitated the killing, in that he was meeting Mrs. Pittman clandestinely at the time of the encounter.

After the evidence had been concluded the court said: "I want to say this about the self-defense. That there's no doubt in my mind the man certainly had some reason to apprehend bodily harm after the door was broken in and the man advanced on him, whether he be armed with a gun or a tire iron. The thing that gives me the most concern is whether or not the man, by placing himself in this position, whether he was without fault. I understand the law of self-defense is that it has to originate without fault. In other words, if I am at fault in bringing on a controversy, self-defense is really in mitigation rather than a perfect defense. * * * I think that's the whole case in a nutshell."

During the course of the argument the court, speaking to counsel for the defendant, said: "The weak spot in your case is the fact he was there with someone else's wife and he armed himself knowing of these threats. I think that's the weak spot in your case and let's talk about that. As far as the other things of this self-defense, I—my mind is pretty well made up that he was acting in self-defense. The question in my mind is whether he didn't bring it partly on himself."

After the argument had been finished the court announced its conclusion in these words: "Mr. Bailey, you may stand up. I feel that all three of you were at fault in the matter. Of course I can't try the deceased. Mrs. Pittman is not here before me. I'm only just considering your particular case. I think to some extent that

you were maneuvered into this situation. Certainly, I certainly will take that into consideration. I have decided to find you guilty of voluntary manslaughter and I do that primarily because of the fact that I think certainly that you acted in self-defense because I feel that is was partly brought on, the difficulty, and I don't say intentionally but it certainly was a reckless disregard brought on by someone else."

■ We agree with the argument on behalf of the defendant that since the killing was in self-defense, as the lower court found, he was entitled to an acquittal. As is pointed out in *Sims* v. *Commonwealth*, 134 Va. 736, 760, 115 S. E. 382, "Homicide in self-defense may be either justifiable or excusable. If it is either, it entitles the prisoner to an acquittal." In either case, he is deemed to be innocent and guiltless of any crime. 40 C. J. S., Homicide, § 114, p. 983 *ff.*; 26 Am. Jur., Homicide, §§ 125, 126, pp. 241, 242.

Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself. 9 Mich. Jur., Homicide, § 39, p. 377; *Dodson* v. *Commonwealth*, 159 Va. 976, 167 S. E. 260.

Excusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm. 9 Mich. Jur., Homicide, § 4, p. 347; *Dodson* v. *Commonwealth, supra.*

■ There is authority for the view that illicit relations between a slayer and the wife of the deceased constitute such provocation as deprives the slayer of the right of claiming justifiable self-defense when assailed by the outraged husband. Other courts reject that view. See 26 Am. Jur., Homicide, § 133, p. 247; 40 C. J. S., Homicide, § 119, p. 992; Annotation, 18 A. L. R. 1068. See also, *Barnard* v. *Commonwealth*, 134 Va. 613, 623, 624, 114 S. E. 563, where this conflict of authority is noted.

It is not necessary that we here decide which view should be adopted in this jurisdiction for there is no evidence of any illicit relations between the defendant and Mrs. Pittman. Nor can it be said that the circumstances under which they were together at the time the encounter occurred constituted such misconduct or provocation

as deprived Bailey of the right of asserting that the killing was in justifiable self-defense. It will be observed that the meeting was not at the Pittman home where a deadly encounter between the two men was likely to occur. It was at the apartment of Mrs. Pittman's mother under circumstances where it might reasonably be anticipated that they would not be attacked by the jealous husband. She had the right to invite the defendant there and he had the right to be present. So far as the evidence shows, there was nothing improper in the conduct of the couple.

Thus, the defendant being without fault, when attacked by Pittman, had the right to stand his ground and kill his assailant if he reasonably apprehended death or great bodily harm to himself. And the lower court expressly found that the defendant had reasonable ground for such apprehension. Under this view of the case the defendant was not precluded from asserting that the killing was in justifiable self-defense.

But even if we take the opposite view and hold with the lower court that the conduct of the defendant constituted a provocation or a bringing on of the difficulty, that did not deprive him of the right of showing that the killing was in excusable self-defense. When the infuriated husband crashed through the door and advanced on the defendant along the narrow hallway and into the bedroom, the defendant retreated as far as he could. As has been said, his only exit was through the hallway and this was blocked by Pittman. Thinking that Pittman was carrying a weapon under his coat, the defendant warned him by telling him that he, the defendant, was armed. Despite this and the warning shot, Pittman advanced and prepared to strike him with the heavy wrench which is obviously a deadly weapon. In this situation, to save himself from death or serious bodily injury, the defendant shot his assailant in self-defense, and the lower court so held.

Thus, under either aspect of the case, whether it be deemed a justifiable or excusable homicide in self-defense, the defendant was entitled to an acquittal.

For these reasons, the judgment of conviction of voluntary manslaughter is set aside and the prosecution dismissed.

*Reversed and dismissed.*