UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia


XAVIER DEMONYE BONILLA

                                                        MEMORANDUM OPINION[*] BY
v.         Record No. 0742-23-1                         JUDGE GLEN A. HUFF
                                                        JUNE 4, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Matthew W. Hoffman, Judge

Charles E. Haden for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Xavier Demonye Bonilla ("appellant") appeals his second-degree murder conviction,

arguing that the trial court erred in denying his motions to strike where the Commonwealth's

evidence was insufficient as a matter of law.  He further contends the trial court erred by preventing

him from introducing evidence of the decedent's prior "aggressive and disruptive" behavior.  For

the following reasons, this Court finds no error by the trial court and, therefore, affirms appellant's

conviction.

_____

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On the night of August 2, 2022, D'nea Williams was working as a bartender at Triple Effectz ("the bar") in Newport News, Virginia. She observed both appellant and the decedent, Justin Dudney, inside the bar that evening. Williams described Dudney as not "overly drunk," but noted that he "aggravate[d] other customers" by "walking up to people, talking to them or saying things to them, like pulling them to him and people not knowing him." Although the bar's manager received multiple complaints about Dudney's behavior, Williams testified that Dudney was not aggressive at any point.

At one point in the evening, Williams saw Dudney approach appellant and act familiarly with him, but appellant "just looked at him like he didn't know what [Dudney] was talking about and just continued on talking to other people." Later that night, Dudney approached appellant from behind while appellant was seated at the bar talking with Williams.[2] Because appellant did not realize Dudney was standing behind him, Williams told him that Dudney was trying to get his attention. Dudney then tapped appellant on the shoulder and said something that appellant asked him to repeat.

Williams testified that she heard Dudney tell appellant, "if there's something you want to get off your chest, we can go to the bathroom." Video surveillance footage from inside the bar showed Dudney step backwards to give appellant space to stand up from his chair. It then depicted

___

[1] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] The Commonwealth also introduced video surveillance footage from a security camera mounted inside the bar facing the bartender's customers, which showed Dudney walk over and stand behind appellant.

the following sequence of events that occurred in mere seconds: appellant stood up and turned to face Dudney, Dudney's right arm moved upward, and appellant punched Dudney twice in the face in quick succession with considerable force. Dudney fell backwards to the ground where he lay without moving and appeared unconscious while appellant walked away. Williams followed appellant and saw him standing by his car nursing a bleeding hand and repeating to himself, "he just walked up on me."

Dudney ultimately died from the injury to his head, and appellant was indicted for second-degree murder. During appellant's trial, the Commonwealth presented Williams's testimony and video surveillance footage from the bar. During Williams's cross-examination, appellant attempted to elicit testimony about Dudney's behavior in the bar two weeks before his death. According to appellant, that testimony would describe how Dudney had appeared to become angry about something on the prior occasion and how he then "mouth[ed] off" to other patrons and even invaded the personal space of a patron by tapping him on the shoulder. The circuit court sustained the Commonwealth's objection to this testimony, finding the proffered evidence insufficient to establish an admissible character trait of the decedent.

During the defense's case-in-chief, appellant testified that he had only punched Dudney in self-defense. He claimed that when he first ordered a drink from Williams, Dudney approached him and said, "don't get no fucking drink from over here, go over there." He then claimed that Dudney started arguing with appellant's friend. While appellant was trying to calm his friend, Dudney said, "this ain't what you want." Appellant testified that he and his friend simply walked away from both of those interactions, but that appellant complained about Dudney's behavior to the bar manager.

Appellant then alleged that he felt "confused" and "scared" when Dudney approached him again at the bar and stood behind him. As appellant stood up from his seat at the bar, Dudney allegedly told him, "I'm going to [the] bathroom if you got something you want to get off your

chest, and no one can save you." Appellant claimed he thought Dudney was trying to start a fight. According to appellant, he thought Dudney "was going to hit" him because Dudney "made a quick move" like "he was jumping at [appellant]." In response, appellant punched Dudney.

When confronted with the video footage, appellant admitted that Dudney had backed away to give appellant space to stand up from the bar stool. And when asked to identify where in the video Dudney "jump[ed]" at him, appellant referenced the moment Dudney's arm began to raise, claiming, "I said his hand was coming up." The video, however, also clearly showed that Dudney did not draw his arm back or close his hand into a fist. Moreover, appellant wavered throughout his testimony about which hand he thought Dudney was going to use to hit him. He also admitted that Dudney's body began to drop after the first punch and before the second one.

The circuit court denied appellant's motions to strike the evidence, and the jury found him guilty of second-degree murder. On May 22, 2023, the circuit court sentenced appellant to 16 years' incarceration. This appeal followed.

ANALYSIS

I. Evidence of Decedent's Prior Behavior

Because he raised a claim of self-defense, appellant argues that the trial court erred in excluding evidence of Dudney's allegedly aggressive behavior in the bar two weeks before he died. "[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "[W]e do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

When a defendant claims self-defense, "[e]vidence of a victim's propensity for violence is relevant to determine 'who was the aggressor or what was the reasonable apprehension of the defendant for his safety.'" *Id.* at 544 (quoting *Workman v. Commonwealth*, 272 Va. 633, 649 (2006)). Conversely, a defendant claiming self-defense is not entitled to offer evidence of prior acts that fall short of showing a propensity for violent and turbulent acts. *Short v. Commonwealth*, 213 Va. 746, 747 (1973) (prior homosexual advances to a third party did not "disclose such violent and turbulent acts as to make the evidence admissible").

Here, appellant's proffer of the expected testimony was that Dudney previously "mouth[ed] off," invaded others' personal space, and otherwise behaved obnoxiously at the bar on a single incident two weeks before Dudney's death. Nothing in that proffer included acts of violence by Dudney or indicated a "propensity for violence." *Carter*, 293 Va. at 544. Therefore, the trial court did not abuse its discretion in sustaining the Commonwealth's objection to the evidence.[3]

II. Sufficiency of Evidence

Appellant next asserts that the evidence was insufficient to convict him of second-degree murder. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

---

[3] In his argument on appeal, appellant mischaracterizes the proffer of Williams's expected testimony. He states that the trial court erred in "preventing [appellant]'s counsel from questioning prosecution witness D'Nea Williams about how Dudney had come into the bar twice in the preceding two weeks and been drunkenly aggressive and disruptive and had even threatened to beat the security guard's ass on one of those occasions." But when seeking admission of Williams's testimony about Dudney's prior behavior, appellant's counsel proffered to the trial court only that, on a single occasion two weeks before the attack, Dudney displayed an angry demeanor, tapped a stranger on the shoulder, and used profanities. Counsel did not proffer that Williams would testify about a threat to beat the bar's security guard.

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Furthermore, this Court defers "to the [fact finder]'s interpretation of all of the evidence, including video evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). At trial, the jury "views video and other evidence to determine [the facts]." *Id.* Accordingly, this Court "view[s] video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the [jury] did." *Id.*

### A. Self-Defense

Appellant first argues that his testimony established that he acted in self-defense. "Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Commonwealth v. Sands*, 262 Va. 724, 729 (2001) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "A claim of self-defense may be either justifiable or excusable; if it is either, the accused is entitled to an acquittal." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998) (citing *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)), *aff'd*, 257 Va. 239 (1999). "Justifiable homicide in self-defense occurs [when] a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or great bodily harm to himself." *Id.* (alteration in original) (quoting *Bailey*, 200 Va. at 96). An excusable killing in self-defense occurs when a defendant, "although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Id.* (quoting *Bailey*, 200 Va. at 96).

Here, the evidence was sufficient for the jury to reject appellant's self-defense claim and convict him of second-degree murder. In particular, the video footage introduced into evidence did not show Dudney engaging in any violent or aggressive behavior towards either appellant or

other persons in the bar. In fact, after approaching appellant while he was seated at the bar, Dudney merely tapped appellant on the shoulder to get his attention. That his statement to appellant was intended as an invitation to fight somewhere else neither justifies nor excuses appellant's violent response. *See Harper v. Commonwealth*, 196 Va. 723, 727 (1955) ("Words alone, no matter how grievous or insulting, are never justification for assault by force or violence.").

Furthermore, when appellant turned to face Dudney and stood up from the bar stool, Dudney took a step back to put space between himself and appellant. At that point, appellant could have walked away from Dudney without any further interaction, just like he admitted to doing twice previously that evening after Dudney directed "inciting" comments towards him. Instead, appellant punched Dudney in the face, saw him begin to fall, and punched Dudney in the face a second time.

Appellant's actions were not made in response to a reasonable threat. Although appellant claimed he thought Dudney was going to hit him first, the video footage contradicts that testimony. This Court determines that no reasonable factfinder could view the video as depicting Dudney threatening violence. It shows only that Dudney started to raise his arm above his head; he did not curl his hand into a fist nor did he draw his arm backwards in preparation for landing a blow to appellant's body. In stark contrast to appellant's testimony, the video very clearly shows that Dudney never "jump[ed]" at appellant or attempted to hit him.

In his testimony, appellant relied on Dudney's raised arm as proof of a physical threat, but when the Commonwealth pointed out that Dudney's hand was not balled or prepared to strike, appellant changed course and claimed it was Dudney's other hand, hidden from the camera's view, that appeared ready to strike. He could not explain, however, exactly what that other hand was doing to make him believe Dudney appeared ready to strike. Accordingly, when

reviewing the totality of the evidence, this Court concludes that a reasonable jury could find beyond a reasonable doubt that appellant did not act in self-defense either time he punched Dudney.

### B. Evidence of Malice

Appellant's second claim on appeal is that, even if the jury could have reasonably rejected his self-defense claim, the evidence failed to establish malice. Murder is a homicide committed with malice. *Edwards v. Commonwealth*, 68 Va. App. 284, 297 (2017). Malice exists "in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice "may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (quoting *Dawkins*, 186 Va. at 61). "Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence." *Luck v. Commonwealth*, 32 Va. App. 827, 833 (2000). "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000). Under the totality of circumstances, malice may be proven even with a single punch. *See, e.g.*, *Johnson v. Commonwealth*, 53 Va. App. 79, 103-04 (2008) (finding intent to permanently injure with a single punch when defendant struck a defenseless victim with premeditated great force).

As established above, the jury was entitled to find that appellant acted out of anger when he punched Dudney and that such behavior was not made in self-defense. Nevertheless, appellant again argues that Dudney's "threat" placed him in reasonable fear for his safety and that his own actions in response were, therefore, not malicious. Because the jury could reasonably discount appellant's claim of a physical threat, the remaining evidence establishes only that Dudney made a verbal comment prior to appellant punching him. This Court reiterates

- 9 -

that "words alone are not sufficient to engender a reasonable provocation that incites passion and negates the presence of malice." *Smith v. Commonwealth*, 68 Va. App. 399, 412 (2018). And appellant's claim that Dudney's statement incited a non-malevolent response is also undercut by appellant's admission that he had already walked away from Dudney twice that night without engaging in physical violence despite Dudney having made other "inciting" comments. The jury was therefore entitled to find that appellant acted with malice in punching Dudney twice in quick succession with enough force to render him unconscious, instead of choosing to walk away a third time.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*