# COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish
Argued at Norfolk, Virginia

TORREY RASHAD WHITLOW

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1477-23-1                JUDGE LISA M. LORISH
                                              DECEMBER 10, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Tonya Henderson-Stith, Judge

(Charles E. Haden, on brief), for appellant. Appellant submitting
on brief.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Torrey Whitlow brings several challenges to his convictions for second-degree murder,
malicious wounding, using a firearm in the commission of a felony, and discharging a firearm in
public resulting in bodily injury. Whitlow argues that the evidence is insufficient to support these
convictions, that the court abused its discretion by refusing his proposed jury instructions, and that
the court erred by granting the Commonwealth's motion to strike a juror for cause. We find no
error and affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

BACKGROUND[1]

Whitlow was tried by a jury for the murder of Lois and Maurice Bailey, for the aggravated malicious wounding of Tyrell Bailey, and for using a firearm in connection with those offenses. What follows is a summary of the evidence presented at trial.

Eric Conners heard an argument outside of his home around 3:30 or 4:00 p.m. When he looked through his open front door, he saw several people arguing and fist fighting on the other side of the street, about four houses down. "[A] lady in a blue shirt," later identified as Lois Bailey, was trying to break up the fight. This first fight eventually ended, but Conners heard it resume around 5:00 or 5:30 p.m.

When Conners looked outside this time, he saw a man in a black T-shirt arguing with a man wearing a white T-shirt. The man in the black shirt was later identified as Maurice Bailey, Lois's son. The argument soon "turned physical" and "fists were . . . thrown." Conners thought Maurice "was getting the better of the other gentleman" until two or three other males in white T-shirts approached and "ganged up" on Maurice, punching and kicking him and "kind of working him over for a while." Maurice eventually broke away and "ended up in the middle of the street." By that time, Conners was standing in his front yard for a better view of the fight.

While Maurice was in the street, one of the men wearing a white T-shirt "got on top of him, mounted him, and just started delivering some . . . pretty tough blows." This man was "short [and] stocky" and had a weight advantage over Maurice. Conners heard the sound of "fists hitting [a man's] face," and Maurice was soon unconscious. The man in the white T-shirt then "dismounted," pulled a gun from behind his waistband and "started firing." He first shot at Lois, hitting her twice. Next, he "fired a couple other shots off in another direction." He then returned to where Maurice

_____

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

lay unconscious and shot him in the head. Conners saw the assailant in the white T-shirt then "casually" walk down the road, enter a red Ford pickup truck, and drive away. Maurice and Lois both ultimately died from their gunshot wounds.

Sergeant David Lefleur of the Norfolk Police Department lived on the same street as Conners. Whitlow lived in the same neighborhood. Lefleur knew Whitlow "[t]hrough interactions in the neighborhood." Lefleur had broken up a fight near Whitlow's house earlier on the day of the shootings. Later that afternoon, Lefleur was home on his back deck when he heard a "volley of gunshots." He ran outside and saw Maurice and Lois lying in the street. Whitlow was standing over Maurice in a "shooter stance." Whitlow scanned the area before turning and walking toward his house. While Lefleur was trying to help Lois, he saw Whitlow drive away in a red pickup truck.

Maurice's brother, Tyrell Bailey, testified at trial as a direct witness to what occurred that day. Bailey testified about the earlier fist fight that Conners overheard, and then about the second fight that ended in the murders. Bailey was also hit by a shot, suffering a graze wound to the head. Bailey testified that Whitlow fired at him first, striking him in the head, before shooting Lois and Maurice. He identified Whitlow as the shooter and testified that only Whitlow had a firearm.

Later that day, Isaiah Johnson (Isaiah) saw a red pickup truck speed down his street and park in front of his house. Two men wearing white shirts got out of the truck and ran toward Isaiah's house. One of the men, who was "heavier-set" than the other, "put something in [a] bush." The two men then fled out of Isaiah's view, leaving the red truck parked in front of his house. Isaiah reported the incident to the police.

Hampton Police Department Senior Forensic Specialist Brandi Johnson photographed the crime scene and recovered eight .40 caliber cartridge casings and two bullet fragments from the roadway. Six of the cartridge casings were found closer to Lois, and two were found near Maurice. Officer Johnson did not recover any firearms at the scene but found a .40 caliber Smith & Wesson

pistol hidden in the bushes near Isaiah's house. Forensic Scientist Christopher Luckie later testified that bullets recovered from Maurice and Lois during their autopsies and the bullet fragments and cartridge casings recovered at the crime scene had been fired from the firearm found in the bushes at Isaiah's house.

Whitlow's brother, Trevaris, testified in Whitlow's defense. Trevaris testified that he was in his yard on the day of the offenses when Whitney Bailey and her brother "Zebo" Bailey walked by. Trevaris argued with Whitney and Zebo after they gave him an "intimidating look." Whitney and Zebo left but later returned with their brother, Demetrius Bailey, leading to a fight between the three Bailey siblings and Trevaris and his brother, Theo. The Bailey siblings returned home after the fight. Sometime later, however, Maurice and Tyrell approached Trevaris's house. According to Trevaris, Maurice started another "full-blown fight." As Trevaris "was getting the best" of Maurice, Tyrell "jumped in" and struck Trevaris on the back of the head with a gun. When Trevaris capitulated, Maurice and Tyrell left.

Trevaris and a cousin later walked to Lois's house to talk to her and encountered Lois and Tyrell. Trevaris "swung on" Tyrell after he saw a "firearm in [Tyrell's] front waistband." According to Trevaris, Tyrell twice attempted to pull the firearm from his waistband during the melee. At one point, Trevaris saw "Maurice running across the street" carrying what looked like a firearm. He later saw a firearm slide along the ground. "[S]econds later," he "heard shots fired." He looked up, "heard another shot," and saw Maurice "collapse." He then turned around and saw Whitlow for the first time during the fight.

Whitlow testified that he arrived home around 5:00 p.m. After learning that Trevaris had been injured earlier in the day and "hear[ing] an argument down the street," he walked toward the Bailey residence armed with a Smith & Wesson .40 caliber firearm. While Whitlow watched the fight between Trevaris and Tyrell, Lois struck him in the back of the head with a metal object. As

he fell to the ground, he saw a gun "skirting the street," and Maurice "going for it," so he reached for his own gun and shot Maurice. He did not remember much else, as he was "dazed and confused" for days after the shooting, had a "massive headache," and suffered "from short-term memory" loss. He claimed that he shot Maurice to protect himself and his family because Maurice was trying to grab the firearm. He denied putting the Smith & Wesson firearm in the bushes at Isaiah's house. He claimed he did not know how Lois got shot.

After considering this evidence, the jury convicted Whitlow of murdering Maurice and Lois, maliciously wounding Tyrell, discharging a firearm in public resulting in bodily injury, and three counts of using a firearm in the commission of a felony.

During the trial, the court made several rulings that are relevant to this appeal. First, the court denied Whitlow's motion to strike the charges against him. Whitlow made such a motion after the Commonwealth rested, arguing that "a lot of people" had not "been able to identify specifically the shooter." He argued, "[W]e have three white T-shirts. We're not quite sure which one is which, and that in and of itself is a compounding element that should not be put forward to the jury." The trial court denied the motion to strike. Whitlow then renewed the same motion after his presentation of evidence without adding any additional argument, and the trial court denied the renewed motion

Next, the court rejected three of Whitlow's proposed jury instructions. The Commonwealth objected to each. The first proposed instruction defined "justifiable homicide." The second sought to instruct the jury that "a person who reasonably believes that another intends to attack him for the purposes of killing him has a right to arm himself." And the third was a proposed instruction addressing eyewitness identification.

Finally, the court struck Juror 20 for cause. Whitlow's jury panel was the same panel that had been summoned for jury service the week before when the same prosecutor and same defense

counsel tried an earlier case. Juror 20 was struck for cause from the earlier venire after she said that she could not be fair and impartial to the Commonwealth because of stories told by her mother-in-law, a sheriff's deputy who transported prisoners.

During voir dire at Whitlow's trial, Juror 20 stated that she had witnessed "family domestic violence." When asked if she believed that experience would affect her ability to be fair and impartial, Juror 20 said, "Possibly." She also told the court that her "mother-in-law [was] one of the sheriff deputies [who] work[ed] at the annex and transfer[red] the prisoners to and from the courthouse." Defense counsel asked if this would impact Juror 20's ability to be fair and impartial, and she responded, "No."

During individual voir dire, the prosecutor asked Juror 20 about the statement she had made the week before that she could "[not] be fair and impartial to the Commonwealth in sitting for the jury." After Juror 20 confirmed that she had made that statement, the prosecutor asked "[i]s that still the same today?" and Juror 20 said "I don't believe so." When asked "[w]hat has changed in the matter of a week," Juror 20 said "The way the questions were presented from the Commonwealth versus the defense" and that "today it was the defense instead over the Commonwealth's questioning, the way it was presented." Juror 20 affirmed "I can be fair. I'm just trying to make a comparison of why there was a difference. I can be fair."

Juror 20 also confirmed that she had stated that the stories her mother-in-law had told her about transporting prisoners would affect her partiality. The prosecutor asked: "I assume that that's not changed in the last week as well?" Juror 20 responded: "Correct." The prosecutor asked whether that factor would affect her ability to be fair and impartial during Whitlow's trial, and Juror 20 replied: "I'm not going to be seeing her in this timeframe while that's going on, but if I do and she has stories about her inmates, I am not sure what she would present and I don't know how it would affect my point of view in that scenario." Defense counsel then asked Juror

20 if she could separate her mother-in-law's stories from the evidence, and Juror 20 responded, "Right. Correct. I would."

The Commonwealth moved to strike Juror 20 for cause, arguing that there was no reason to believe that "anything could have occurred that would change in a week other than her answers," that Juror 20 could not be rehabilitated, and "that at this point in time she can't be fair and impartial." Whitlow opposed the motion to strike, arguing that Juror 20 had been rehabilitated when she affirmed that she would remain neutral and separate the stories she heard from her mother-in-law from the evidence presented at trial. He insisted that she could be fair and impartial "based on her testimony today." The trial court granted the Commonwealth's motion to strike Juror 20 for cause.

Whitlow appeals.

ANALYSIS

I. Sufficiency of the Evidence

Whitlow argues on appeal that the evidence was insufficient to support his convictions because he "merely acted in self-defense," or "in the heat of passion upon sudden provocation." But he did not make that argument to the trial court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. This Court "will not consider an argument on appeal that was not presented to the trial court." *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329 (2021). "[T]he same argument must have been raised, with specificity, at trial before it can be considered on appeal." *Pulley v. Commonwealth*, 74 Va. App. 104, 125 (2021) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). The primary reason for requiring a contemporaneous objection is to allow opposing counsel and the trial court a fair opportunity to address the challenge and prevent

unnecessary appeals and retrials. *Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* at 743 (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Whitlow argued in his first motion to strike only that the evidence failed to prove that he was the shooter, and he did not add any new arguments when he renewed his motion to strike. Whitlow also did not move to set aside the verdict. While he mentioned self-defense in his closing argument, that is not sufficient to preserve his self-defense claim on appeal because he was tried by a jury. *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (en banc) (a closing argument does not preserve a sufficiency claim because it "is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law").

Therefore, he failed to preserve his sufficiency challenge for appeal. Whitlow does not invoke any of the exceptions to Rule 5A:18, and we do not raise them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

II. Jury Instructions

Whitlow argues that the trial court erred by refusing his proposed jury instructions on justifiable homicide, the right to arm oneself, and eyewitness identification. "A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "[W]hile a defendant is entitled to have the jury instructed on his theory of the case, such an instruction must be supported by '[m]ore than a scintilla

- 8 -

of evidence.'" *Mayberry v. Commonwealth*, 66 Va. App. 93, 101 (2016) (second alteration in original) (quoting *Eaton v. Commonwealth*, 240 Va. 236, 255 (1990)). "The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis." *Id.* (alteration in original) (quoting *Woolridge v. Commonwealth*, 29 Va. App. 339, 348 (1999)). "Upon review, the evidence must be viewed in the light most favorable to the proponent of the instruction." *Id.*

Justifiable Homicide

Whitlow asserts that the trial court erred by refusing his proposed jury instruction on justifiable homicide, which he told the trial court was "directly quoted" from this Court's decision in *Lynn v. Commonwealth*, 27 Va. App. 336 (1998). That said, the record on appeal does not include the proffered instruction. "[T]he judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Green v. Commonwealth*, 65 Va. App. 524, 534 (2015) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)). Without the proposed instruction in the record, we cannot determine whether it accurately stated the law.

But we can conclude that the instruction the trial court gave properly instructed the jury on justifiable homicide. "Justifiable homicide in self-defense occurs [when] a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or great bodily harm to himself." *Lynn*, 27 Va. App. at 353 (alteration in original) (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). The trial court gave the following instruction:

> If you believe that the defendant was without fault in provoking or bringing on the fight/difficulty, and you further believe that:
>
> (l) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and

> (2) he used no more force, under the circumstances as they appeared
> to him, than was reasonably necessary to protect himself from the
> perceived harm, then he acted in self-defense, and you shall find the
> defendant not guilty.

Jury Instr. 22. The trial court's instruction tracks the definition of justifiable homicide from *Lynn*. "[A] court may exercise its discretion and properly exclude an instruction that both correctly states the law and is supported by the evidence when other 'granted instructions fully and fairly cover' the relevant principle of law." *Lawlor v. Commonwealth*, 285 Va. 187, 256 (2013) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)). Even assuming without deciding that Whitlow's proposed jury instruction accurately defined justifiable homicide, the trial court properly instructed the jury on that principle of law and did not abuse its discretion in refusing a duplicative instruction.

### The Right to Arm Oneself

Whitlow proffered Virginia Criminal Model Jury Instruction 52.520 on the right to arm oneself:

> A person who reasonably believes that another intends to attack him
> for the purpose of killing him or doing him serious bodily harm has a
> right to arm himself for his own necessary self-protection. In such a
> case, no inference of malice can be drawn from the fact that he
> armed himself.

Whitlow argued that "a number of pieces of testimony were indicative" that he "had access to information," leading him to believe that he might be attacked and suffer death or serious bodily harm before arming himself. The Commonwealth objected to the instruction, arguing that Whitlow did not testify to any facts supporting such a belief; he testified that he was a mere "bystander at the scene." The Commonwealth maintains on appeal that there was no evidence that Whitlow armed himself after developing a reasonable fear of being attacked or killed. We agree with the Commonwealth.

Whitlow testified that he arrived home around 5:00 p.m. and learned of the incident between Trevaris and the Baileys. Although he observed unspecified injuries on Trevaris, he did not ask

about them and was not sure "exactly what[] [was] going on," indicating that he was not present during the earlier fight. Later, he heard an argument down the street and walked toward Lois's house armed with the Smith & Wesson. He testified that he then merely watched the fight between Trevaris and Tyrell until he was attacked from behind and saw Maurice lunging for a gun. These facts, even viewed in the light most favorable to Whitlow, did not indicate that he reasonably believed that "another intend[ed] to attack him for the purpose of killing him or doing him serious bodily harm" *before* he armed himself. Rather, the evidence he presented suggested that he brought the weapon to an argument that did not involve him. Accordingly, the trial court did not abuse its discretion in concluding that Whitlow's proposed instruction was not supported by even a scintilla of evidence.

## Eyewitness Identification

Whitlow also challenges the trial court's refusal of his proposed jury instruction covering "eyewitness identification," which tracks Virginia Criminal Model Instruction No. 2.800. Whitlow asserts that his proposed instruction correctly stated the law, was supported by more than a scintilla of evidence, and covered all the issues "which the evidence fairly raise[d]." At the same time, the trial court did instruct the jury with Criminal Model Instruction No. 2.500:

> You are the judges of the facts, the credibility of the witnesses, and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.
>
> You may not arbitrarily disregard believable testimony of a witness. However, after you have considered all the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper.
>
> You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you

- 11 -

may determine which witnesses are more believable and weigh their testimony accordingly.

Jury Instr. 4.

The Supreme Court of Virginia has rejected similar arguments advocating for the "eyewitness identification" model instruction when Criminal Model Instruction No. 2.500 was given to the jury. In *Payne v. Commonwealth*, 292 Va. 855, 867-71 (2016), the Supreme Court affirmed the trial court's refusal to give an instruction on eyewitness testimony in part because Criminal Model Instruction No. 2.500 already adequately covered all the issues raised in the proposed instruction. Indeed, the Court found that the proposed eyewitness instruction's added specificity "counseled against its use." *Id.* at 871. And in *Watson v. Commonwealth*, 298 Va. 197, 210 (2019), the Supreme Court affirmed the trial court's refusal to give Criminal Model Instruction No. 2.800—the same instruction Whitlow offers in this case. The Court held that the trial court properly "instructed the jury on its role as the judges of the facts, the credibility of the witnesses, and the weight of the evidence," making the refused instruction unnecessary, even though it correctly stated the law and was supported by the evidence. *Id.*

Here, the trial court instructed the jury on its role as the judges of the facts, the credibility of the witnesses, and the weight of the evidence. And it provided the jury with guidelines as to how to judge witness credibility. The given instruction governing the credibility of witnesses as a whole adequately covered the point addressed in Whitlow's proposed instruction on eyewitness testimony, and the jury "is presumed to have followed the instructions of the trial court." *Tizon v. Commonwealth*, 60 Va. App. 1, 14 n.5 (2012) (quoting *Prieto v. Commonwealth*, 283 Va. 149, 169 (2012)). Accordingly, the trial court did not abuse its discretion by refusing a lengthy and complicated instruction on eyewitness credibility.

III. The trial court did not err in striking Juror 20 for cause.

Whitlow asserts that the trial court erred by granting the Commonwealth's motion to strike Juror 20 for cause because there was no basis for doing so. "The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012). Thus, "[e]very prospective juror must stand indifferent to the cause." *Id.* at 23; *see also* Code § 8.01-358 (providing counsel the right to ask witnesses "any relevant question" that helps "ascertain . . . bias or prejudice" and requiring a court to replace a juror who "does not stand indifferent in the cause"). "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Taylor*, 61 Va. App. at 22 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 298 (1976)). "It is well settled that '[i]f [a juror] has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is *sensible of any bias* or prejudice, he is excluded by the law.'" *Northcraft v. Commonwealth*, 78 Va. App. 563, 588 (2023) (emphasis added) (alterations in original) (quoting *Keepers v. Commonwealth*, 72 Va. App. 17, 42 (2020)). We apply these principles "strictly," "and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Taylor*, 61 Va. App. at 23; *see also* Rule 3A:14 (requiring voir dire to determine whether any prospective juror "[h]as a bias or prejudice *against the Commonwealth* or the accused" (emphasis added)). "Thus, 'the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011) (quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000)).

Whitlow argues that Juror 20 was impartial. The "question of juror impartiality is one of fact." *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023). We give great deference to the trial court on this matter because it "is in a superior position to determine whether a prospective juror's

- 13 -

responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Keepers*, 72 Va. App. at 42-43 (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)).

In assessing a juror's impartiality, "[t]he trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror." *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017) (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978)). We will not disturb "the trial court's exercise of judicial discretion in deciding challenges for cause . . . unless manifest error appears in the record" because, unlike us, the trial court can "observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors first-hand." *Id.* (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)). "In conducting our review we consider the juror's entire *voir dire*, not merely isolated statements." *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 412-13 (2002)).

Whitlow does not claim that anyone seated on the jury was biased against him. Still, assuming without deciding that Whitlow's right to an impartial jury was implicated by striking Juror 20 for cause, we conclude that the trial court did not err. The voir dire, viewed in its entirety, shows that only a week earlier, Juror 20 stated she could not be fair and impartial to the Commonwealth and that her impartiality would be affected by stories her mother-in-law had told her about transporting prisoners. Although Juror 20 stated at Whitlow's trial that she could be impartial, the trial court was in the best position to assess that claim. The trial court had the opportunity to hear her answers and consider her demeanor, her tone, and the tenor of her dialogue with the attorneys to assess her sincerity and determine whether she could remain a fair and impartial juror. *Taylor*, 67 Va. App. at 455. Moreover, Juror 20 indicated that her mother-in-law's stories potentially could affect her point of view and that her ability to be fair and impartial might "possibly" be affected by

her previous exposure to domestic violence. Because no manifest error appears in the record, we will not disturb the trial court's decision on appeal.

## CONCLUSION

The evidence fairly supported the jury's verdict. And that verdict was rendered after the jury had received full and proper instructions from the trial court. We also find no error in the trial court's decision to strike Juror 20 for cause. Accordingly, the trial court's judgment is affirmed.

*Affirmed.*