COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Causey and Lorish
Argued by videoconference

UNPUBLISHED

JAMAL LAQUAN MALMBERG

v.        Record No. 0254-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
MAY 27, 2025

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Stephen A. Mutnick (Winslow, McCurry & MacCormac, PLLC, on
brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


After a jury trial, the Circuit Court for the City of Richmond convicted Jamal Malmberg

of voluntary manslaughter[1] and use of a firearm in the commission of murder.  Malmberg asserts

that the trial court erred in (1) denying his motion to continue for the preparation of transcripts,

(2) granting the Commonwealth's motion *in limine* allowing the jury to view the responding

officer's body worn camera, (3) denying his motion to continue for failure to timely provide him

with a jury list, (4) denying his proffered jury instruction relating to the use of a firearm charge,

(5) finding the evidence sufficient to prove voluntary manslaughter, and (6) finding the evidence

sufficient to support his conviction for use of a firearm in the commission of a felony.  We find

no error and affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Malmberg was indicted for first-degree murder, a violation of Code § 18.2-32, but the
jury convicted him of voluntary manslaughter, a lesser-included offense.

BACKGROUND[2]

Malmberg shot and killed Mitchell Cobb. The shooting was captured on video. The question before the jury was whether Malmberg acted in self-defense or with premeditation.

Malmberg's first jury trial in December 2022 ended in a mistrial. In February 2023, the trial court entered an order for the preparation of the transcripts from that trial. The second trial was rescheduled for July 25, 2023. On May 30, 2023, the Commonwealth and Malmberg moved the court for entry of a second order for the preparation of the transcripts from the earlier trial because they had not yet been prepared. The parties specifically wanted to consult the transcripts for the trial court's rulings on various motions made during the first trial. The trial court granted the motion and entered a new order.

Eleven days before trial, Malmberg moved for a continuance because the transcripts had still not been prepared. Malmberg argued that his expert witness would not have sufficient time to review the transcripts before trial. The trial court denied the continuance because he had waited to request funds to hire an expert witness until more than five months after the first trial ended. The trial court also concluded that because the transcripts were due on July 19, 2023, before the second trial would start, the parties would have sufficient time to review them for trial.

Before the second trial began, the Commonwealth made a motion *in limine* for permission to show the responding officer's body worn camera to the jury. Malmberg objected, arguing that the probative value of the evidence was outweighed by its prejudice because the body worn footage showed Cobb "suffering throughout" his interaction with the officer; that it

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

depicted a lot of blood; and because the officer was "clearly distressed during the time frame that he [was] with the [victim]." Although the trial court agreed with Malmberg that such evidence was prejudicial in a murder case, it ultimately concluded that the jury "needs to see it," and thus granted the Commonwealth's motion.

On the first morning of trial, Malmberg again moved for a continuance, this time on the basis that the jury officer failed to provide him with the jury list until around 2:00 p.m. the day before, which was Monday. Malmberg explained that he had requested the list on the previous Friday, and he asserted that the late disclosure of the list prevented him from investigating the potential jurors, thus interfering with his right to "a fair and impartial jury." The trial court found that Malmberg was not prejudiced by the delay in providing the list and denied the continuance motion.

The evidence at trial included the following: On the day of the shooting, Richmond Police Officer Jonathan Lazarus responded to a "random gunfire call" near Nine Mile Road and Bunche Place. Officer Lazarus drove his patrol vehicle toward the gunfire and eventually found a man, later identified as Cobb, lying in a grassy area. Cobb was alive, but had sustained several gunshot wounds and was barely conscious. Officer Lazarus applied a tourniquet to Cobb's leg and rubbed his chest to "keep him awake." He did not find any firearms on Cobb's person or in the immediate vicinity. Officer Lazarus's interaction with Cobb and the efforts he took to assist him were captured on his body worn camera and, over Malmberg's repeated objection, played for the jury. Cobb later died from his injuries.

Richmond Police Detective Patrick Ripley was the lead investigator on the case. After visiting the crime scene and obtaining surveillance footage of the area, Detective Ripley identified Malmberg as the primary suspect and took him into custody about 24 hours later. Malmberg admitted that he shot Cobb, but insisted that he did so in self-defense after Cobb

- 3 -

threatened him. A videotape capturing the relevant portions of Malmberg's confession was admitted at trial and played for the jury. The Commonwealth also played for the jury the video surveillance from a street camera that captured the shooting. That surveillance captured the muzzle shots as Cobb fled from the gunfire and showed Cobb dragging himself through the grass to the place where he ultimately came to rest. The video also showed Malmberg bending down toward the ground before leaving the area in his truck immediately after the shooting. No firearms were recovered from the scene and no bullet casings were found on the ground.[3]

Cobb's wife, Nanisha, testified that there was another incident between Malmberg and Cobb that occurred about a year before the shooting, where she saw Malmberg point a gun at Cobb's face during an argument and threaten to kill him. The next morning, Malmberg allegedly brandished a shotgun at Cobb and Nanisha from his vehicle as he left the apartment complex and again said that he would kill them. On another occasion, Nanisha was granted a protective order against Malmberg for threats made against her and Cobb. That said, she was not at home on the night of the instant offense and did not see what happened.

Forensic Investigator Kathleen O'Connell collected evidence from the crime scene and took photographs. Investigator O'Connell testified that she did not find any firearms or cartridge casings at the scene of the shooting. She did, however, recover one unspent cartridge and a bullet fragment. She also later received two additional bullet fragments from the State Medical Examiner's Office recovered during Cobb's autopsy.

Forensic Pathologist Renee Robinson performed Cobb's autopsy. Dr. Robinson testified that Cobb suffered "multiple gunshot wounds of the lower extremities." There were "six discreet wound paths." Two of the bullets entered through the front of Cobb's body, one entered on the

---

[3] Detective Ripley testified that he would expect to find bullet casings at the scene of the shooting because Malmberg said he used a .9 mm semiautomatic to shoot Cobb. According to Detective Ripley, "Semiautomatic [weapons] expel[] casings."

side, and the remaining three entered through the back. Cobb died from a combination of all the gunshot wounds and the resulting extensive blood loss.

After the Commonwealth rested, Malmberg argued that the evidence was insufficient to prove his actions were malicious or premeditated and moved to strike the evidence. Finding that those issues were matters for the jury, the trial court denied the motion.

Malmberg testified and admitted that he had a previous altercation with Cobb. But he said that at the time of the shooting, he and Cobb had resolved all their issues. On that night, Malmberg said he was at the apartment complex with his girlfriend when Cobb arrived with a friend. At some point, Cobb's friend suggested he go inside his apartment and let Malmberg and his girlfriend go inside their house. Cobb responded that he was a "grown ass man," that he could do whatever he wanted, and that he would "beat [his friend's] ass." Malmberg could tell that Cobb was intoxicated because of Cobb's loudness, the smell of alcohol, and the bottle of liquor in his hand.

After Cobb's friend left, Cobb "linger[ed] around," and when Malmberg's girlfriend asked him to go home, Cobb threatened to "beat [her] ass again, like [he] did before." Cobb then stumbled toward Malmberg, who "kind of stiff-arm[ed] him back." Cobb stumbled to the ground and reapproached Malmberg, this time apologizing and reaching toward Malmberg for a hug. Malmberg patted Cobb on the back and "embraced the hug back," but then Cobb "start[ed] squeezing the life out of [him]." Cobb squeezed so tight that Malmberg could feel his "firearm being tugged on the side of [his] hip." Malmberg, who stood 6'4" against Cobb's 5'8" frame, pushed Cobb away and pulled the firearm out of his waistband.

According to Malmberg, Cobb was angry that Malmberg brandished his firearm and yelled that he was going to "blow [Malmberg's] head off." Cobb threatened to kill Malmberg

and claimed that he was going to "get his K"[4] and shoot Malmberg's house up with his girlfriend in it. Thinking that Cobb was going to pull a weapon on him, Malmberg "opened fire." Malmberg said that his heart was pounding, his mouth was dry, he was having trouble breathing, and he was scared. He kept shooting until he no longer felt a threat. He testified that as he drove away from the scene moments later, he asked if Cobb wanted help but Cobb yelled, "no[,] Fuck you." Malmberg drove away and later "tossed" the firearm.

During his renewed motion to strike, Malmberg argued that the evidence proved he acted in self-defense and that there was no evidence of premeditation supporting a first-degree murder conviction. At best, he contended, the evidence proved voluntary manslaughter. The trial court denied the renewed motion to strike.

Malmberg submitted a proposed jury instruction for the court's consideration that read:

> If you find the defendant not guilty of murder, then you shall find
> him not guilty of the use of a firearm while committing murder.

Malmberg argued that the instruction was necessary to instruct the jury on "the logical relationship between the elements for the primary and the secondary offense as defined in the respective finding instructions," and to caution the jury against returning inconsistent verdicts. The Commonwealth objected to the instruction, and the trial court refused it.

Following closing arguments, the jury convicted Malmberg of voluntary manslaughter and use of a firearm in the commission of murder. Malmberg filed a motion to set aside the verdict, again arguing that the jury should have been instructed that if they found him not guilty of murder then they should find him not guilty of using a firearm in the commission of murder. He also argued that the evidence was insufficient for a finding on the firearm charge because

---

[4] Cobb was referring to his AK rifle.

they did not prove murder—one of the two required elements. The trial court ultimately denied the motion to set aside the verdict and proceeded to sentencing. Malmberg appeals.

## ANALYSIS

### I. Continuance Motions

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Cornell v. Commonwealth*, 76 Va. App. 17, 32 (2022) (quoting *Hall v. Commonwealth*, 296 Va. 577, 587 (2018)). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." *Id.* (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). That is, "[a]buse of discretion and prejudice to the complaining party are essential to reversal." *Butler v. Commonwealth*, 264 Va. 614, 621 (2002) (quoting *Ferguson v. Colonial Pipeline Co.*, 206 Va. 719, 722 (1966)). "The absence of one renders inconsequential the presence of the other." *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007). "We cannot reverse if the defendant 'has shown no prejudice resulting from what he claims was an abuse of discretion' in granting or denying a continuance motion." *Id.* (quoting *Quintana v. Commonwealth*, 224 Va. 127, 135 (1982)).

### A. Delayed Transcripts

Malmberg asserts that the trial court erred in denying his continuance motion after the transcripts from his first trial were not provided with sufficient time for him to assess them for accuracy, to prepare for his second trial, or to give them to his expert witness for review. The trial court rejected these contentions, as do we. It is true that "when a circuit court's refusal to grant a continuance 'seriously imperil[s] the just determination of the cause,' the judgment must be reversed." *Haugen*, 274 Va. at 34 (alteration in original) (quoting *Myers v. Trice*, 86 Va. 835, 842

(1890)).  "Prejudice, however, may not be presumed; it must appear from the record."  *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990).

In this case, the same attorneys represented Malmberg at his first trial and the same judge presided over the proceedings.  Thus, as the trial court found, the parties were well-aware of the legal issues governing the case and the trial court's previous rulings on all relevant evidentiary motions.  Malmberg received the transcripts on July 19, 2023, affording him five days to read and review the transcripts for accuracy and familiarize himself with the court's previous rulings.  The same witnesses from the first trial were subpoenaed to testify, the same evidentiary issues from the first trial were implicated, and the singular issue to be decided by the jury was, as it was in the first trial, whether or not Malmberg acted in self-defense.  Thus, Malmberg's insistence that he could not properly and efficiently prepare for a trial that he had already prepared for once, at length, is unsupported by the record.  In any case "[m]ere reference to a need for more time to prepare is insufficient to show that a continuance was improperly denied."  *Ortiz v. Commonwealth*, 276 Va. 705, 723 (2008).

With respect to the experts, we note that the mistrial occurred in December 2022, but Malmberg waited until June 2023 to procure expert witnesses for the second trial scheduled for July 25, 2023.  Moreover, although Malmberg was aware of the lengthy delay in getting the transcripts prepared, he did not alert the trial court in time to expedite the process; nor did he seek a continuance until July 14, 2023—eleven days before trial.[5]  More importantly, Malmberg did not proffer for the record the expert's expected testimony or how the transcripts were material to the expert's opinion.  We cannot therefore ascertain what, if any, prejudice resulted by the trial court's denial of Malmberg's continuance motion upon his bare assertion that his expert would not have

---

[5] Malmberg and the Commonwealth requested for the transcripts to be expedited on May 30, 2023.

time to prepare. *See, e.g.*, *Ray v. Commonwealth*, 55 Va. App. 647, 649 (2010) (A proffer is necessary because it "allows us to examine both the 'admissibility of the proposed testimony'" as well as any prejudice to the proffering party in excluding it. (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006))).

We therefore find no abuse of discretion in the trial court's denial of Malmberg's continuance motion because Malmberg has failed to show that he was prejudiced by the fact that the transcripts were not provided in a timely manner.

### B. Delayed Jury List

Malmberg also contends that the trial court abused its discretion when it denied his motion for a continuance after he was not provided a jury venire list until the day before trial. We disagree.

Code § 8.01-353(A) states: "[u]pon request, the clerk . . . *shall* make available to all counsel of record in that case, a copy of the jury panel to be used for the trial of the case at least three full business days before the trial." (Emphasis added). That said, it is well-settled that "the provisions of Code § 8.01-353 . . . are directory rather than mandatory." *Butler*, 264 Va. at 620. Accordingly, "a failure to comply with those provisions is not a per se basis for reversing a trial court's judgment in either a civil or a criminal case." *Id.* Still, "the process of securing a fair and impartial jury includes 'the ability of the parties to investigate potential jurors for information which may disqualify a juror for cause or otherwise impact the jury selection process.'" *Id.* (quoting *Norfolk Southern Ry. Co. v. Bowles*, 261 Va. 21, 28 (2001)). "Thus, adherence to the provisions of Code § 8.01-353 is required to the extent necessary to insure due process." *Id.* When, as here, we are "dealing with a statute whose terms are directory, '[a]ny determination whether a [party] has suffered prejudice constituting a denial of due process must be made on a case-by-case basis.'" *Id.* (alterations in original) (quoting *Jamborsky v. Baskins*, 247 Va. 506, 511 (1994)).

- 9 -

Malmberg has not shown that he suffered any specific prejudice constituting a denial of his right to due process. He admitted that he received the jury list more than 24 hours before trial, affording him at least some time to preliminarily investigate prospective jurors. Moreover, although Malmberg vaguely asserts that he was unable to properly investigate the jury panel for bias, he fails to articulate any reason his inability to examine the jurors for such bias could not have been adequately accomplished during voir dire. Indeed, both the Commonwealth and Malmberg were given the opportunity to question the jury venire and strike jurors, both for cause and peremptorily, before the trial court empaneled the jury.[6]

We conclude that because Malmberg had sufficient opportunity to investigate the prospective jurors for any biases or other information tending to disqualify them from the venire, he has failed to show that he was prejudiced by the trial court's denial of his continuance motion. Thus, we will affirm the court's ruling.

## II. Body Worn Camera Footage

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not

---

[6] We also note that Malmberg assigns no error to the manner in which the trial court constituted the jury panel, nor does he suggest that the resulting jury was not impartial.

reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "All relevant evidence is admissible" unless another evidentiary principle requires its exclusion. Va. R. Evid. 2:402. Relevant evidence is inadmissible if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice . . . ." Va. R. Evid. 2:403(a). It is axiomatic that "[t]he responsibility for balancing the competing considerations of probative value and prejudice" rests soundly within the trial court's discretion. *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990). "The fact that evidence is highly prejudicial to a party's claim or defense, in and of itself, 'is not a proper consideration in applying the balancing test.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lee v. Spoden*, 290 Va. 235, 252 (2015)). Instead, the trial court must determine "whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Lee,* 290 Va. at 252. "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251.

The record does not support Malmberg's assertion that the body worn camera footage was so "highly inflammatory, irrelevant," and prejudicial as to compel exclusion of the evidence. The footage merely shows Officer Lazarus arriving to the crime scene and helping Cobb, who was lying face down in the grass. Contrary to Malmberg's assertion, Officer Lazarus does not appear on video to be overly upset or emotionally distraught as he helped Cobb. Although Cobb was lying on the ground after sustaining several gunshot wounds, he was largely unconscious and did not exhibit any clear signs of intense pain. Moreover, the blood on his pants and legs was minor enough that

- 11 -

Officer Lazarus could not immediately ascertain the extent or seriousness of Cobb's injuries. "All evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Fields*, 73 Va. App. at 672-73 (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)). Malmberg was indicted for first-degree murder. We cannot say that the crime scene as Officer Lazarus found it was irrelevant to the elements of that offense—particularly to the malicious nature of Malmberg's actions. The body worn camera video was therefore admissible for that purpose.

Because we cannot conclude that the footage captured by Officer Lazarus's body worn camera so inflamed the passions of the jury as to invite decision based on mere emotion or sympathy rather than to a thoughtful consideration of the evidence as a whole, we affirm the trial court's ruling.

III. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

- 12 -

might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## A. Voluntary Manslaughter

"[I]n Virginia, criminal homicide is divided into two categories: murder and manslaughter. 'Murder' is the unlawful killing of another with malice. 'Manslaughter, on the other hand, is the unlawful killing of another without malice.'" *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "[T]o reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation. Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Id.* (quoting *Canipe*, 25 Va. App. at 643). "Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason." *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "Heat of passion excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). Accordingly, "[v]oluntary manslaughter is the unlawful killing of another, 'committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation . . . .'" *Woods*, 66 Va. App. at 131 (quoting *Wilkins v. Commonwealth*, 176 Va. 580, 583 (1940)).

The evidence was sufficient to support a guilty verdict on the lesser-included offense of voluntary manslaughter. Malmberg shot Cobb at close range after an apparent argument and then continued to fire at him as Cobb tried to run away. Surveillance footage showed Cobb turning away from Malmberg before falling to the ground and dragging himself in the grass before stopping at the location where he was ultimately discovered by police. An autopsy indicated that Cobb suffered multiple gunshot wounds to his lower extremities resulting in extensive blood loss to his legs, which

- 13 -

ended his life. Rather than seek assistance for Cobb, Malmberg fled the scene after leaving Cobb lying in the grass at night. He "tossed" the gun in an effort to conceal the evidence. Malmberg later admitted to police that Cobb did not have a weapon and, in fact, no weapon was found on Cobb's person or at the crime scene. The jury was entitled to credit Malmberg's explanation for the shooting and find that his actions were committed during a quarrel and upon sudden provocation.

Contrary to Malmberg's contention, the jury was not required to accept his assertion of self-defense. "Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Commonwealth v. Sands*, 262 Va. 724, 729 (2001) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "A claim of self-defense may be either justifiable or excusable; if it is either, the accused is entitled to an acquittal." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998). "Justifiable homicide in self-defense occurs [when] a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or great bodily harm to himself." *Id.* (alteration in original) (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). An excusable killing in self-defense occurs when a defendant, "although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Id.* (quoting *Bailey*, 200 Va. at 96).

The jury did not err in rejecting Malmberg's self-defense claim. Although the record contains testimony that Cobb was belligerent, intoxicated, and rude on the night of the offense, Cobb's wife, Nanisha, testified that Malmberg had a history of being confrontational with Cobb and brandishing his firearm at him. Malmberg denied that history, but he also testified that all

acrimonious matters between himself and Cobb were resolved several months before the shooting. The evidence also showed that Cobb, who stood only 5'8" and was highly intoxicated, moved toward Malmberg, who was 6'4", for an apologetic "hug" and apparently "squeezed the life out of" Malmberg. Although Cobb was unarmed, Malmberg brandished his firearm and shot Cobb six times as Cobb turned away from the gunfire, fell to the ground, and dragged himself several feet before stopping to rest in the grass. Instead of rendering assistance or calling 911, Malmberg bent down, apparently to retrieve the cartridge casings from the ground, and then fled the scene. "To establish a claim of self-defense, a defendant must show that he *reasonably* feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016) (emphasis added). Further, the force used must have "be[en] proportional to the threat posed." *Peeples v. Commonwealth*, 30 Va. App. 626, 635 (1999) (en banc). In rejecting Malmberg's claim of self-defense, the jury clearly found that any threat posed here did not justify the use of deadly force. That finding is supported by the record and not plainly wrong, so we affirm.

## B.  Use of a Firearm in the Commission of Murder

Malmberg then asserts that the evidence was insufficient to find him guilty of using a firearm in the commission of murder. Malmberg does not claim that he is entitled to a reversal of his conviction due to the inconsistency of the jury's verdicts. Instead, he argues that the evidence failed to support the conviction "as a matter of law" because he lacked the requisite malice necessary for him to commit a murder.

The trial court instructed the jury as follows:

> The defendant is charged with the crime of using a firearm while committing or attempting to commit murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant used a firearm; and

- 15 -

(2) That the use occurred while the defendant was committing or attempting to commit murder.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty.

If you find that the Commonwealth has failed to prove beyond a reasonable doubt either or both of the elements of the crime, then you shall find the defendant not guilty.

Malmberg reasons that he could not be found guilty of using a firearm in the commission of murder because the jury concluded he "lacked the requisite malice necessary for a conviction of first or second-degree murder."

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)). Malice inferred from acts and conduct "encapsulates 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 288 (1984) (Poff, J., concurring in part, and dissenting in part)). It "exists where a defendant lacks the deliberate intent to kill, but the circumstances of the defendant's actions are 'so harmful that the law punishes the act as though malice did in fact exist.'" *Flanders v. Commonwealth*, 298 Va. 345, 358 (2020) (quoting *Watson-Scott*, 298 Va. at 256). "Notably, 'malice may be implied from the deliberate use of a deadly weapon.'" *Watson-Scott*, 298 Va. at 256 (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)). It also exists whenever a "defendant 'willfully or purposefully, rather than negligently, embark[s] upon a course of wrongful conduct likely to cause death or great bodily harm.'" *Watson-Scott*, 298 Va. at 257 (quoting *Essex*, 228 Va. at 280-81).

That the jury acquitted Malmberg of murder did not preclude the jury from also finding that he used a firearm in the commission of murder. "Juries can render verdicts that seem inconsistent

- 16 -

with the weight of the evidence and courts are generally not permitted to second guess such a verdict." *White v. Commonwealth*, 67 Va. App. 599, 617 (2017). The question before us is whether the record contained evidence to support the jury's finding that Malmberg's actions were malicious. Although Cobb was highly intoxicated, threatening and belligerent, he was smaller than Malmberg, unarmed, and attempting to flee when Malmberg fired six times directly at his lower extremities, striking his femoral vein and causing a tremendous loss of blood. Malmberg did not render assistance or call 911, and instead drove right past Cobb as he lay dying in the grass. "The presence of malice 'is a question of fact to be determined by [the trier of fact].'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). Given the evidence presented, including the video surveillance, we cannot say the jury lacked a basis to conclude that Malmberg's actions were malicious for purposes of the use of a firearm charge. Because a jury may render inconsistent verdicts,[7] this is the case notwithstanding its separate finding that Malmberg committed voluntary manslaughter and not first-degree murder.

In sum, because the evidence was sufficient to support a murder conviction, we affirm Malmberg's conviction for use of a firearm in the commission of murder as charged in the indictment.

IV. Jury Instruction Related to Firearm Offense

Finally, we consider Malmberg's argument that the court should have issued a cautionary jury instruction explaining that if the jury acquitted him of murder, it had to acquit him of the firearm charge. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the

---

[7] In *McQuinn v. Commonwealth*, 298 Va. 456, 459 (2020), our Supreme Court explained that inconsistent verdicts may arise where "the evidence is legally sufficient to convict the defendant of the predicate offense," but the jury has convicted the defendant of the compound offense, and not the predicate offense, and that, in this scenario, the inconsistent verdict must not be overturned "because the jury could have convicted the defendant on both charges but quite possibly decided not to do so out of a sense of grace and leniency."

law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). Moreover, "[w]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Dandridge*, 72 Va. App. at 676 (alteration in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 260 (2018)).

Malmberg was charged with murder and use of a firearm in the commission of murder. The trial court instructed the jury on the elements of those two offenses, accurately stating the law. It is true that in *Gaines v. Commonwealth*, 39 Va. App. 562 (2003) (en banc), we held that it would be proper for a trial court to issue the very instruction Malmberg requested. In *Gaines*, a jury likewise issued inconsistent verdicts, convicting the defendant of manslaughter on an indictment for first-degree murder and also convicting him of using a firearm during the commission of murder. *Id.* at 565. The court, over Gaines's objection, issued a firearm instruction in that case stating "the two elements of the offense in separate numbered clauses;" to-wit: "(1) use of a firearm; (2) while committing murder, rape, robbery, burglary, or abduction." *Id.* at 566. Gaines had proposed a "minor modification" to append "the parenthetical phrase '(not manslaughter)' to the second element of proof." *Id.* at 567. On appeal, we affirmed the court's refusal to allow the modification because the granted instructions fully and fairly covered the principles of law and Gaines's instruction "was no more or less correct than the instruction given." *Id.* at 568. We observed that

Gaines "did not request a separate cautionary instruction explaining that if the jury acquitted of murder, it must acquit of the firearm charge," *id.*, and stated that "[a] separate instruction would have been one proper way to instruct the jury on the problem of inconsistent verdicts," *id.* at 569. We suggested that it would have been more appropriate to instruct the jury that "if you find the defendant not guilty of murder, then you shall find him not guilty of use of a firearm while committing murder." *Id.*

In this case, Malmberg copied his proposed jury instruction directly from *Gaines* and argues that the trial court abused its discretion by not instructing the jury that if it acquitted him of murder, it had to find him not guilty of using a firearm in the commission of murder. While we agree that such an instruction would have been proper, we cannot say the court erred by refusing it. "The decision whether to give a cautionary instruction is a matter lying within the trial court's discretion and will not be disturbed on appeal unless the record shows an abuse of discretion." *Spence v. Commonwealth*, 60 Va. App. 355, 365 (2012) (quoting *Goins v. Commonwealth*, 251 Va. 442, 465 (1996)). "A court abuses its discretion when it incorrectly ascertains what the law requires." *Graves v. Shoemaker*, 299 Va. 357, 361 (2020). But "[a] trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow clearly written instructions." *Ludwig v. Commonwealth*, 52 Va. App. 1, 13 (2008) (quoting *Gaines*, 39 Va. App. at 567).

Malmberg was on trial for first-degree murder and use of a firearm in the commission of murder. The trial court properly instructed the jury on the elements of those offenses. As we discussed above, "[t]he fact that verdicts may, on their face, arguably appear inconsistent does not provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support each verdict." *Pugliese v. Commonwealth*, 16 Va. App. 82, 96 (1993). Because a reasonable jury could have found sufficient evidence to support a conviction for murder, and because there is

nothing further in the record to suggest that the jury did not follow the given instructions in reaching its guilty verdict, we must affirm the trial court.

## CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*